## SEBA SMITH *vs.* ALEXANDER H. PUTNEY.

Where a bill of sale of chattels was made, and at the same time and place a mortgage bill of sale thereof was given back to secure the purchase money, and the papers were executed and delivered in the room in which the chattels then were in view of the parties, but no formal delivery was proved; and where the mortgagor went into possession of the property, and it was afterwards attached on a writ against him; it was held, in a suit against the attaching officer, that there was a sufficient delivery to the mortgagee.

After a verdict is read in Court, and before it is affirmed, the presiding Judge may rightfully inquire of the jury, upon what principles their verdict is founded.

In an action of trespass *de bonis asportatis* against an officer for attaching and removing the property of the plaintiff, in a suit against a third person, the measure of damages is the value of the property, as it was at the time of the taking.

TRESPASS *de bonis asportatis* for taking and carrying a printing press, types, and articles used in a printing office, particularly described in the writ. The defendant justified the taking as a deputy sheriff, on the 16th day of *June*, 1837, on a writ in favor of *Francis O. J. Smith*, for an alleged libel upon him, published in the *Portland Daily Courier*, *June* 15, 1837, against *E. G. Waterhouse*, alleging the property to have been, at the time of the taking, in *Waterhouse*. The property was proved to have been taken by the defendant, as a deputy sheriff, by the written order of *F. O. J. Smith*, the plaintiff in that suit. The whole evidence at the trial before EMERY J., is given in the report of the case, from which it appears, that the property in dispute had belonged to *Seba Smith*, and had been used in printing a paper, called the

*Portland Daily Courier* and *Weekly Courier;* that on the twelfth day of *May,* 1837, the plaintiff, for the consideration of eight hundred dollars, sold out the right to publish the paper, and the press, types and printing apparatus, being the same described in the declaration, to *E. G. Waterhouse,* and gave a bill of sale thereof, and that at the same time *Waterhouse* made a mortgage bill of sale of the property back to the plaintiff, to secure notes for the purchase money, one half to be paid in one year, and the other half in two years; that the papers were actually delivered, three or four days after their date, in the printing office where the articles were; but no formal delivery by one to the other was proved. The plaintiff and *Waterhouse* had, to that time, been partners in publishing the paper, and a notice of the dissolution was published, dated *May* 12, 1837. Afterwards, the paper was published by *Waterhouse,* who had the possession and use of the property, and the plaintiff had a room in the printing office, where he sometimes did business. From the plaintiff's testimony, it appeared, that *Waterhouse* had not the necessary means to purchase printing materials, and that the publication of the paper was suspended, from the time of the attachment of the plaintiff to the third of *July* following. There was testimony introduced on both sides in relation to the value of the articles taken and removed by the defendant.

The counsel for the defendant contended, that the plaintiff had proved no title to the property attached, because he had not made or offered any proof that there was any delivery of the property by *Waterhouse* to the plaintiff, under the mortgage bill of sale, nor any delivery of any part or portion thereof in token of the whole, but that the contrary appeared to be the fact; that *Waterhouse,* immediately on the execution and delivery of the papers, went into and maintained, entire possession and control of said property, and thereby perfected his title thereto, and remaining in possession of the same until the time of the attachment, the said *Putney* was justified in taking the same by virtue of the aforesaid precept. And further, that the bill of sale, and the delivery under the same, perfected the title of *Waterhouse,* and that inasmuch as said *Waterhouse,* from the time of the exchange of said papers, up to the time of said attachment, without any agreement that he should so do, remained in the possession of the property, there was

the legal *prima facie* evidence of fraud, which the plaintiff had not attempted to contradict or control, and that therefore, under these circumstances, said pretended title, of said *Smith*, was legally fraudulent as against attachments at the suits of others against *Waterhouse*, and that, on this ground, the officer was justified. On the subject of damages, the defendant's counsel contended, that in the form of the action, sued out by the plaintiff, the actual value of the goods at the time of the taking, was the measure of damages, unconnected with any establishment or employment in which said goods were used at said time, and that said damages could not be enhanced by any difficulty or injury said *Waterhouse* might be called to encounter from poverty or otherwise, in procuring another similar establishment; and that in no view of the law, had the jury any right to swell said damages in behalf of the plaintiff, by reason of any injury *Waterhouse*, under any circumstances, might sustain. And further, that in no event was the plaintiff entitled to a sum beyond the amount secured by the mortgage bill of sale, and interest on the same, that being the extent of the interest the plaintiff had in the property.

The Judge directed the jury, that if from the evidence they were satisfied, that the agreement for sale was fairly and honestly made on the twelfth of *May*, and that *Waterhouse* then assumed the control of the property with the plaintiff's assent, with the understanding of the parties that he might still collect and receive his debts in the office; and if they believed, that within the four days afterward, the bill of sale and the mortgage deed and notes, were executed and delivered by the parties respectively, at the same time in the office where the property was within their view and control, though the papers were dated on the twelfth of *May*, a few days before they were actually delivered, it must be deemed as one transaction, taking effect from the delivery of the deeds, and that the arrangement adopted was a sufficient delivery, both parties being there present, to vest the property in the plaintiff in mortgage, if there was no other objection. As to the suggestion of its being legally fraudulent, the jury were instructed, that fraud is not to be presumed, but it might be presumed from circumstances. And if those in evidence convinced them that the arrangement was made with a design to delay, or defeat, or de-

fraud creditors, the jury would consider it void against creditors, and that the officer would be justified, by his precept, in making attachment, and the verdict should be in his favor. As to the damage, if they found for the plaintiff, they should give him the value of the property mortgaged and taken by the officer, as it was then situated, at the time of the taking.

After the verdict was read, but before it was affirmed, on inquiry at the request of the defendant's counsel, the jury stated, that "they found the actual value of the property taken, to be the amount of the notes and interest, eight hundred and twenty-four dollars, and that what is over that amount, to make up the nine hundred dollars, they considered damages of cost the plaintiff had been put to." The plaintiff's counsel objected to this inquiry being made. If the instructions were erroneous, a new trial was to be granted.

The defendant filed a motion for a new trial, because the damages were excessive, and because the verdict was against law and evidence, and influenced by political hatred.

*S. Fessenden & Deblois*, argued in support of the positions taken for the defendant at the jury trial ; and cited *Flagg* v. *Dryden*, 7 *Pick.* 52 ; *Penniman* v. *Hartshorn*, 13 *Mass. R.* 87 ; *Shumway* v. *Rutter*, 7 *Pick.* 56 ; *Young* v. *Austin*, 6 *Pick.* 280 ; *Lanfear* v. *Sumner*, 17 *Mass. R.* 110 ; *Rice* v. *Austin*, 17 *Mass. R.* 197 ; *Badlam* v. *Tucker*, 1 *Pick.* 389 ; 1 *Taunt.* 318 ; *Ward* v. *Sumner*, 5 *Pick.* 59 ; *Homes* v. *Crane*, 2 *Pick.* 607 ; *Carrington* v. *Smith*, 8 *Pick.* 419 ; *Bonsey* v. *Amee*, 8 *Pick.* 236 ; 4 *M. & S.* 240 ; *Sturtevant* v. *Ballard*, 9 *Johns. R.* 337 ; *Lunt* v. *Whitaker*, 1 *Fairf.* 310 ; *Wheeler* v. *Train*, 3 *Pick.* 255 ; *Brinley* v. *Spring*, 7 *Greenl.* 241 ; *Bartlett* v. *Williams*, 1 *Pick.* 288 ; *Cobb* v. *Haskell*, 2 *Shepl.* 303 ; 1 *M. & S.* 335 ; *Barrow* v. *Paxton*, 5 *Johns. R.* 258 ; *Quincy* v. *Tilton*, 5 *Greenl.* 277. As to the measure of damages, they cited *Daggett* v. *Adams*, 1 *Greenl.* 198 ; *Woodham* v. *Gelston*, 1 *Johns. R.* 134 ; *Soule* v. *White*, 2 *Shepl.* 436 ; 3 *Stark. Ev.* 1453. As to the right to inquire of the jury, they cited *Hix* v. *Drury*, 5 *Pick.* 296 ; *Pierce* v. *Woodward*, 6 *Pick.* 206 ; *Little* v. *Larrabee*, 2 *Greenl.* 37.

*Preble*, argued for the plaintiff, and cited *Brinley* v. *Spring*,

7 *Greenl.* 241 ; *Bissell* v. *Hopkins*, 3 *Cowen*, 166, *and note*, *and cases cited* ; *Meserve* v. *Dyer*, 4 *Greenl.* 52; *Howe* v. *Ward*, 4 *Greenl.* 195; *Haskell* v. *Greeley*, 3 *Greenl.* 425; *Holbrook* v. *Baker*, 5 *Greenl.* 309 ; *Tidd's Pr.* 391 ; *Forbes* v. *Parker*, 16 *Pick.* 462.

The opinion of the Court was drawn up by

EMERY J. — The direction of the Judge, as to the execution and delivery of the mortgage, in our judgment, is completely sustained by the cases in 7 *Greenl.* 241, *Brinley et al.* v. *Spring* ; 3 *Cowen*, 166, *Bissel* v. *Hopkins* ; 15 *Maine R.* 373, *Ingraham* v. *Martin*.

The Court consider that the inquiry made of the jury was correct. It would seem to be a necessary step, in order to prevent injustice, and to enable the Court, in a sensible and proper manner, to determine whether the verdict be conformable to legal principles, provided the inquiry be made at the time of giving in the verdict. *Hix* v. *Drury*, 5 *Pick.* 296 ; *Pierce* v. *Woodward*, 6 *Pick.* 206 ; *Little* v. *Larrabee*, 2 *Greenl.* 37.

The disclosure being rightfully made by the jury, the most important question is, whether there is brought before the Court sufficient to warrant judgment on the verdict, which is for nine hundred dollars. The jury stated, that " they found the actual value of the property taken, to be the amount of the notes and interest, eight hundred and twenty-four dollars, and that what is over that amount to make up the nine hundred dollars, they considered damages of costs the plaintiff had been put to." The jury were directed, if they found a verdict for the plaintiff, that they should give him the value of the property mortgaged, and taken by the officer, as it was then situated, at the time of taking. We consider that this was the proper instruction, by which the jury should have been governed. The verdict is therefore wrong, and must be set aside, unless the plaintiff will release the excess between the eight hundred and twenty-four, and nine hundred, dollars.