## D. W. GERMOND'S ADMINISTRATOR

v.

## CENTRAL VERMONT RAILROAD COMPANY.

RUTLAND COUNTY, 1893.

Before: TAFT, ROWELL, TYLER AND MUNSON, JJ.

*When contributory negligence for the jury. Finding after jury have separated. Harmless error.*

1. The question of contributory negligence should not be withdrawn from the jury so long as there is any rational doubt not only as to the facts, but also as to the inference to be deduced from the facts.

2. *Held*, That the evidence of the plaintiff tended to prove such a combination of circumstances as required the submission of the case to the jury.

3. The plaintiff claimed that the defendant was guilty of negligence in three particulars, and the court submitted these three claims to the jury with instructions to find a general verdict. The jury agreed upon a verdict for the plaintiff, sealed it up and separated. When the verdict was delivered in open court, the presiding judge required the jury to state the particular ground upon which they had found for the plaintiff, and they did so. *Held*, no error, for no further deliberation was thereby required.

4. Such a finding is an authoritative statement from the jury of the ground upon which they have based their verdict, and renders immaterial any error in the submission of the other claims of the plaintiff.

Case for the negligence of the defendant, resulting in the

death of the plaintiff's intestate.  Plea, the general issue.
Trial by jury at the March term, 1892, Ross, Ch. J., pre-
siding.  Verdict and judgment for the plaintiff.  The de-
fendant excepts.

It was conceded that the plaintiff's intestate was killed by
being struck by a locomotive under the control of the de-
fendant.  The accident occurred at a crossing in the village
of Rutland.  At that point the highway crosses several
tracks of the defendant, and at the time of the accident and
for some time before, the defendant kept stationed there a
flagman for the purpose of notifying the public when they
might or might not cross.  The track upon which the intes-
tate was killed was known as the main passenger track.
Directly west from this and about twenty-three feet distant
from it, is another track.  The highway crosses both these
tracks from east to west, and the tracks themselves run
nearly north and south.  The evidence of the plaintiff tend-
ed to show that the intestate was engaged in drawing lath
from a car situated somewhere in the defendant's yard west
of both these tracks to some point east of the tracks, with a
horse and lumber wagon; that he had loaded his wagon
with lath, and had driven up to the westerly of these two
tracks, which was at that time occupied by a freight train
backing slowly to the south; that as soon as the engine,
which was at the north end of the train, had cleared the
crossing, the defendant's flagman, who also stood just to the
west of these tracks, motioned to the intestate and another
team, which were standing there, to cross; that the other
team crossed in safety, and that the intestate undertook to
cross, but was struck by a locomotive which was backing
down upon the main track from the south, drawing two
empty passenger coaches.

It was conceded that at some time the flagman attempted
to stop the intestate, and the witnesses for the defendant
testified that he warned him not to proceed before he had

crossed the westerly track upon which the freight train was, while the testimony of the plaintiff tended to show that he did not attempt to stop the intestate until after he had crossed this track, and got nearly or quite upon the track where he was struck. The evidence of the plaintiff further tended to show that one of the brakemen upon the freight train seeing the danger of the plaintiff's intestate, shouted to the engineer upon the engine which was about to strike the intestate, to stop; that the engineer upon the freight train took this to be a signal for him to stop, and that the freight train did stop just after it had cleared the crossing; that the freight engine was then blowing off steam, that several persons in the vicinity were shouting, and that there was from one cause and another a good deal of noise and confusion.

After crossing the track upon which the freight train was backing down, the engine which struck the intestate was in full view as it moved towards him, and the defendant claimed that, even if he had been motioned to cross by the flagman, it was still his duty to look, and that he ought to have seen, and must have seen this engine, and should have stopped before driving upon the track in front of it; and requested the court to direct a verdict for the defendant upon that ground. This the court declined to do, and the defendant excepted.

The plaintiff claimed that the defendant was negligent in three particulars; first, in that its flagman improperly motioned the plaintiff's intestate to cross in front of the moving engine; second, in that the defendant had provided the train by which the intestate was struck with an insufficient and incompetent crew; third, in that the defendant did not properly control its train at the time of the accident. In view of the decision of the court it is immaterial what the evidence of the plaintiff was upon these last two claims.

The defendant insisted that there was no evidence in support of them which entitled the plaintiff to have them sub-

mitted to the jury. The court, however, submitted all three claims to the jury, with instructions to return a verdict for the plaintiff if they found the defendant negligent in any one of these three particulars. To the action of the court in submitting these last two claims to the jury the defendant excepted, upon the ground that there was no evidence to support them.

The case was given to the jury in the afternoon. During the night they agreed upon a verdict for the plaintiff, sealed it up and separated. The next morning when they delivered this verdict in open court, the following special verdict was taken by the court under circumstances detailed in the opinion, and against the exception of the defendant:

"The jury on their oath say that the negligence of the defendant, causing the injury, arose from the action of the flagman. F. H. Chapman, foreman."

*C. A. Prouty* and *C. W. Witters* for the defendant.

There was no evidence tending to show that the train was insufficiently manned, and therefore this issue was improperly submitted to the jury. *Worthington* v. *Central Vermont R. R. Co.*, 64 Vt. 107; *Crystal* v. *T. & B. R. R. Co.*, 124 N. Y. 519; *Daniels* v. *Staten, &c., Transit Co.*, 125 N. Y. 407; *Taylor* v. *Yonkers*, 105 N. Y. 202; *Ayres* v. *Hammondsport*, 130 N. Y. 665; *Wynn* v. *Central Park, &c., R. R. Co.*, 133 N. Y. 575; *Berry* v. *Chicago, &c., R. R. Co.*, 73 Wis. 197; 40 N. W. Rep. 687.

The jury had no power to add to their verdict after they had sealed it up and separated. 2 Thomp. Trials, §§ 2,552, 2,633; *Montgomery* v. *Maynard*, 33 Vt. 450.

*George E. Lawrence* and *J. C. Baker* for the plaintiff.

Contributory negligence is a question for the jury under proper instructions from the court. *Fasset* v. *Roxbury*, 55

Vt. 552; *Barber* v. *Essex*, 27 Vt. 62; *Hill* v. *New Haven*, 37 Vt. 501; *Taylor* v. *Day*, 16 Vt. 566; *Vinton* v. *Schwab*, 32 Vt. 612; *Stacks* v. *Railroad Co.*, 79 N. Y. 464; Beach on Con. Neg., 451; Shear. and Redf. Neg., § 54, and cases there cited.

In order to justify its withdrawal from the jury, both the facts and the inferences must be beyond all possible doubt. Pierce R. R., 317, and cases cited; *Detroit, &c., R. R. Co.* v. *Van Stenburg*, 17 Mich. 99; *Wheelock* v. *B. & A. R. R. Co.*, 105 Mass. 203; *Gaynor* v. *S. P. R. R. Co.*, 7 A. & E. Ry. Cases, 400; *Lesan* v. *Maine Central R. R.*, 23 A. & E. Ry. Cases, 240; *Whitsett* v. *Chicago, &c., R. R.*, 22 A. & E. Ry. Cases, 342; *Stackus* v. *New York Central R. R. Co.*, 79 N. Y. 464.

In the confusion of the moment the plaintiff's intestate might be excused for not seeing the particular train which injured him. *McGovern* v. *N. Y. Central & H. H. R. R.*, 67 N. Y. 417; *Pa. R. R. Co.* v. *Werner*, 89 Pa. 59; *French* v. *R. R. Co.*, 116 Mass. 537; 2 Shear. and Redf. Neg., 477.

If there was error in submitting to the jury the question of the defendant's negligence in manning or controlling its train, it was cured by the special finding. *Hogle* v. *Clark*, 48 Vt. 418; *Davis* v. *Judge*, 46 Vt. 655; *Hodge* v. *Bennington*, 43 Vt. 450.

The jury have power until they have been discharged, to alter or add to their verdict so as to make it conform to their real finding. *Sutliff* v. *Gilbert*, 8 Ohio 405; *Lundy* v. *Clark*, 45 Minn. 477; *Meclin* v. *Bloom*, 54 Miss. 365; *Smith et al.* v. *Meldren, Admr.*, 107 Penn. 348; *Douglass* v. *Tousey*, 2 Wend. 352; *Bunn* v. *Hoyt*, 3 Johns. 255; *Tyrell* v. *Lockhart*, 3 Black (Ind.) 133; *Beal* v. *Cunningham*, 42 Me. 362; *Tifield* v. *Adams*, 3 Iowa 487; *Mason* v. *Messa*, 122 Mass. 427; *Warner* v. *New York Central R. R. Co.*, 52 N. Y. 437; *Pritchard* v. *Hennessey*, 67 Mass. 294; *Montgomery* v. *Maynard*, 33 Vt. 450.

And the presiding judge may require the jury to state the grounds of their verdict, even after it has been sealed up. *Dorr* v. *Fenno*, 12 Pick. 521; *Spoor* v. *Spooner*, 12 Met. 281; *Lawler* v. *Earle*, 5 Allen 22; *Spurr* v. *Shelburne*, 131 Mass. 439; *Hix* v. *Drury*, 5 Pick. 296; *Pierce* v. *Woodard*, 6 Pick. 206; *Parrott* v. *Thacher*, 9 Pick. 426; *Walker* v. *Bailey*, 65 Maine 354; *Norris* v. *Haverhill*, 65 N. H. 89; *Cross* v. *Grant*, 62 N. H. 675.

TYLER, J.   If the defendant's evidence had not been disputed, that as soon as the Delaware & Hudson train had backed from the crossing the deceased, in disregard of the flagman's signal and command to stop, drove across the D. & H. track, and then, with the defendant's locomotive in view, attempted to pass over the twenty-three feet space and the track of the defendant, taking the risk of being struck by the defendant's locomotive before he could reach the east side of the track upon which the locomotive was running, there would have been good ground for the motion for a verdict.   But the evidence upon this subject was conflicting. While the defendant's tended to show these facts, evidence introduced by the plaintiff tended to show that the flagman signaled and told the deceased to cross the first track, and that he did not attempt to stop him until he had entered upon the space between the two tracks and his horse had passed onto the track of the defendant.

It was a controverted question whether the deceased crossed the D. & H. track of his own volition and against the flagman's admonition, or, with the other carriage that was standing there waiting to cross, was signaled by the flagman to pass over that track.

If, seeing the danger, he took the risk and lost, his negligence contributed to the happening of the accident, and as matter of law no recovery can be had.   On the other hand, if the deceased was in the space between the tracks in obe-

dience to the signal, it was a fair question for the jury whether he then acted as a reasonably prudent man would have acted in the circumstances.

The plaintiff had a right to have the case considered in view of the evidence which she had produced. Her evidence tended to show that the bell on the defendant's locomotive was constantly ringing, that the brakeman on the D. & H. train, seeing the danger, shouted to the engineer on the defendant's locomotive, that the locomotive on the freight train whistled, so there was considerable noise and confusion. According to this evidence the deceased may have understood, and as a prudent man have had a right to understand, that he was being urged to hasten forward. The locomotive of the D. & H. train had stopped as soon as it had cleared the crossing so as to be almost directly behind the deceased; the horse and wagon would have reached nearly across the space between the tracks, and the deceased may reasonably have thought in the moment of confusion that his only safety was in crossing the track of the defendant. The fact that he was urging his horse, together with the fact that the natural instinct of men is to avoid rather than encounter danger, renders it probable that the deceased supposed that the first signal to advance was being repeated and emphasized by the flagman rather than being countermanded by him. He may have been in such a state of mind from the peril in which he found himself as to have omitted to do what he otherwise would have done, and been legally excusable for such omission.

Upon the plaintiff's evidence a verdict could not have been directed for the defendant. The court had no right to establish a standard of ordinary prudence and turn the case out of court, because in his own judgment the conduct of the deceased fell short of that standard. He could not have withdrawn the question of fact from the consideration of the jury even though he was fully convinced that the inference

of negligence should have been drawn from the conduct of the deceased, because fair-minded persons might have come to a different conclusion upon that subject. To have warranted such action the inference of negligence must have been so plain as not to have admitted of discussion or rational doubt. *Detroit & Mil. R. R. Co.* v. *Steinburg*, 17 Mich. 99; *Hill, Admr.*, v. *New Haven*, 37 Vt. 501.

The question of negligence must be submitted to the jury as one of fact, not only when there is room for difference of opinion between reasonable men as to the existence of the facts from which it is proposed to infer negligence, but also when there is room for such a difference as to the inferences which might be drawn from conceded facts. When this is the case the issue must go to the jury, no matter what may be the opinion of the court as to the value of the evidence or the credibility of the witnesses. It is for the court to say whether there is any evidence in the case from which negligence might reasonably be inferred, and then it is for the jury to say whether, from the facts thus proved, negligence ought to be inferred. 1 Shear. & Red. on Neg., § 54.

To justify the withdrawal of a case from the jury, the negligence must appear so clearly that no construction of the evidence or inference drawn from the facts would have warranted a contrary conclusion, and that a verdict of the jury the other way would have been set aside as against evidence. *Stackus* v. *N. Y. C. & H. R. R. Co.*, 79 N. Y. 464.

The leading cases were examined by Rowell, J., in *Worthington* v. *Central Vt. R. R. Co.*, 64 Vt. 107, and these propositions were formulated—that when the law prescribes what shall constitute negligence, or when the act relied upon to show negligence is isolated, then negligence becomes a question of law; but when the standard of negligence is not prescribed, and there is a combination of facts and circumstances relied upon to show negligence, the question becomes

one of law only when those facts and circumstances are so decisive one way or the other as to leave no reasonable doubt—no room for opposing inferences.

In this case the evidence was not so decisive of contributory negligence as to preclude a difference of opinion in different minds upon that subject. There was a combination of circumstances from which no legal inference of negligence could be drawn. The motion to direct a verdict was therefore properly overruled.

It appears that the jury agreed upon a general verdict for the plaintiff, sealed it up, separated for the night, and brought it into court the next morning. After they had rendered it the court asked the foreman this question: "Did you find the negligence was in reference to the negligence of the flagman?" to which the foreman answered, "In reference to the negligence of the flagman." The clerk then, by direction of the court, wrote out this special verdict: "The jury on their oath say that the negligence of the defendant causing the injury arose from the action of the flagman," which the foreman signed. The court then read the verdict to the jury and inquired if it was their verdict, to which the foreman replied that it was, while some of the jurors "nodded assent," and none of them dissented. This was in open court, and the defendant did not ask that the jury be inquired of more fully nor that they should be polled.

The inquiry by the court called for no further deliberation by the jury. Their answer was authoritative information to the court as to a finding which they had already made upon one of the three issues submitted to them in the charge. When this was reduced to writing and signed by the foreman it became a part of the verdict, and the findings upon the other questions were immaterial. In this action of the court there was no error.

The special finding renders it unnecessary to consider

whether or not there was error in submitting to the jury the question as to the defendant's locomotive being properly manned.

*Judgment affirmed.*