BELLA TURON, EXECUTRIX OF THE LAST WILL AND TESTAMENT OF HERMAN M. TURON, DECEASED, PLAINTIFF-APPELLANT, v. J. & L. CONSTRUCTION CO., A BODY CORPORATE, AND EDWIN SMITH, INC., LIKEWISE A BODY CORPORATE, DEFENDANTS, AND JAMES W. PETERSON, DEFENDANT-RESPONDENT.

Argued November 19, 1951—Decided January 28, 1952.

*Mr. Isaac C. Ginsburg* argued the cause for appellant.

*Mr. William G. Bischoff* argued the cause for respondent (*Messrs. Carroll, Taylor & Bischoff*, attorneys).

The opinion of the court was delivered by

HEHER, J. Plaintiff's decedent died November 29, 1950, as the result of injuries sustained the prior August 29 through the wrongful acts of defendants, as is said; and the action was brought to recover the pecuniary loss suffered by his widow and next of kin in accordance with *R. S.* 2:47-1 *et seq.*, as amended (the Death Act, so-called), and as well damages for the consequent pain and suffering endured by the decedent himself.

The fatal injury came from the fall of a portion of a temporary wooden fence surrounding a school construction project then in process at the northwest corner of Maryland and Pacific Avenues in Atlantic City, New Jersey, which had been removed and put to one side by the defendant Peterson's servants, at rest on the sidewalk against the adjoining fence, to afford access to the building site. The fence was erected by defendant J. & L. Construction Co., the general contractor. Peterson was a subcontractor for the brick work and masonry. At the time of the mishap, the defendant Edwin Smith, Inc., was engaged in delivering material by truck through the open gateway, which was approximately eight feet wide.

The *gravamina* of the complaint are the insecurity of the removed gate section of the fence, laid against both the general contractor and the subcontractor, and careless contact with the fence by Smith's truck as it moved through the passway, whereby the gate fell and struck decedent as he proceeded along the sidewalk. The general contractor and the subcontractor each paid $6,000 to plaintiff in exchange for a covenant not to sue; and the issue was then tried as to Peterson.

The jury were instructed that plaintiff was entitled "to only a single satisfaction" for the losses sustained, if occasioned by negligence, and in case the issue of liability be resolved in favor of plaintiff, the assessment of damages must take into account the payments made by Peterson's codefendants and cover the difference only if the damages be found to exceed that sum, but if less than the sum so paid,

then there should be "a special verdict, stating that the plaintiff is entitled to recover but that she has received full satisfaction"; and if Peterson was not guilty of negligence, the verdict should be "no cause for action." The jury returned a verdict of "no cause for action." In the absence of the trial judge for the performance of judicial duties elsewhere, one of the county judges, by the former's designation with the consent of counsel, received the verdict of the jury. The judge inquired: "You do that, ladies and gentlemen of the jury, because you think the estate has received sufficient moneys by the settlement in the other cases?" The record shows that "The jury" answered: "We do"; and that upon a poll of the jury at the instance of plaintiff's attorney each juror answered that "his or her verdict is 'no cause for action.'"

A motion by the plaintiff for a new trial was denied. Her appeal to the Appellate Division of the Superior Court was certified here for decision on this court's own motion.

## I.

The first insistence is that the verdict is "inconsistent" and "irreconcilable" and of doubtful meaning, and therefore inadequate to sustain the judgment. The reasoning, in a word, is that there was a "general verdict" in favor of defendant on the issue of liability, but that the jury's response to the inquiry of the judge who received the verdict constitutes a finding of liability which "had been adequately compensated." It is argued *contra* that the jury returned a general verdict in favor of the defendant Peterson as to liability, and that the answer to the inquiry of the judge who received the verdict suggests that the jury "improperly considered the plaintiff had already been sufficiently compensated by settlements with the other defendants in arriving at the verdict of 'no cause for action,'" and "merely reflects improper processes of reasoning or incorrect application of the legal principles stated in the charge of the Court," and

cannot be received to impeach what in form and substance and intent constitutes a general verdict. In disposing of the rule to show cause, the trial judge expressed the view that the "leading question" addressed to the jury by the judge who took the verdict was "out of time" and that, at all events, "the court does not analyze the processes by which jurors determine facts, except where it must necessarily conclude that the verdict was reached against the weight of the evidence or the result of mistake, bias and prejudice."

█ But it is obvious that the jury's response to the judge's interrogation as to the intent and significance of the deliverance cannot be ignored in determining the quality and content of the verdict. It is elementary that a verdict is to be read as a whole, in the light of the pleadings and the pertinent instructions of the judge, and given effect according to its plain intendment. The intent controls, if ascertainable from the jury's return. *Malinauskas v. Public Service Interstate Transportation Co.,* 6 *N. J.* 269 (1951). And this without regard to whether the action was abortive or had the elements of a special verdict within the submission adequate to sustain a final judgment.

█ It is a rule of general acceptance that, barring a statute *contra*, a trial court may in its discretion inquire of a jury, upon the return of a verdict, as to the grounds or principle upon which the verdict is based, and that no exception lies to the exercise of such discretion. The inquiry is to determine the intention of the arbiters of the facts, in aid of a proper judgment.. *Pierce v. Woodward,* 6 *Pick.* 206 (*Sup. Jud.* 1828); *Dorr v. Fenno,* 12 *Pick.* 520 (*Sup. Jud.* 1832); *Smith v. Putney,* 18 *Me.* 87 (*Sup. Jud.* 1841); *Sporr v. Spooner,* 12 *Metc.* 281 (*Sup. Jud.* 1847); *Lawler v. Earle,* 5 *Allen* 22 (*Sup. Jud.* 1862); *Walker v. Bailey,* 65 *Me.* 354 (*Sup. Jud.* 1876); *Norris v. Haverhill,* 65 *N. H.* 89, 18 *A.* 85 (*Sup.* 1889); *Germond's Adm'r. v. Central Vermont R. Co.,* 65 *Vt.* 126, 26 *A.* 401 (*Sup.* 1893); *Hart v. Brierley,* 189 *Mass.* 598, 76 *N. E.* 286 (*Sup. Jud.* 1905). The practice does not depend upon the consent of the parties. Yet the power

is to be exercised sparingly and with great caution. *Walker v. Bailey, supra; Dorr v. Fenno, supra.* The purpose of the inquiry is to insure the recording of the verdict "intended to be rendered and actually rendered by the jury." *Jones v. Pennsylvania R. R. Co.,* 78 *N. J. L.* 571 (*E. & A.* 1910). In that case, the interrogation was made by the clerk of the court in the absence of the trial judge. Where the verdict rendered is general in form, inquiry as to the ground of the verdict is not precluded by the direction of the judge, in the charge, to return a special verdict in the event of particular findings. Compare *Mair v. Bassett,* 117 *Mass.* 356 (*Sup. Jud.* 1875). And, generally, the answer of the foreman of the jury to the inquiry of the court is to be taken as the answer of the jury in the absence of objection by an individual juror. *Walker v. Sawyer,* 13 *N. H.* 191 (*Super. Ct. of Jud.* 1842). The foreman's response, in which his fellow jurors have joined, may be made a part of the record and given the effect of special findings of the facts so stated. *Spurr v. Inhabitants of Shelburne,* 131 *Mass.* 429 (*Sup. Jud.* 1881). *Vide Rule* 3 :49–2 of this court.

Here, the verdict is not vague or indefinite. The special finding thus related to the trial court is not at variance with the general conclusion that plaintiff had no cause of action against the defendant Peterson in respect of the subject matter of the complaint. These findings are entirely consistent and certain in their intendment and meaning, and adequate to support a judgment for this defendant. It seems to have been so regarded by the parties at the time. There was no suggestion of a need for clarification.

A verdict may be molded in consonance with the plainly manifested intention of the jury, and judgment entered accordingly. *Rossman v. Newbon,* 112 *N. J. L.* 261 (*E. & A.* 1934) ; *State v. Jankowski,* 82 *N. J. L.* 229 (*Sup. Ct.* 1912) ; *Humphreys v. Mayor and Council of Woodstown,* 48 *N. J. L.* 588 (*E. & A.* 1886) ; *Stewart v. Fitch & Boynton,* 31 *N. J. L.* 17 (*Sup. Ct.* 1864). And a judgment may be

amended in this court to conform to the jury's verdict. While some of the cases deem it an inherent attribute of courts of general appellate jurisdiction proceeding according to the common law, the power of amendment to prevent miscarriages of justice for errors and mistakes in matters of form not constituting an invasion of the province of the jury or the substantial rights of the parties has long had statutory recognition in New Jersey. Within that range, the amendatory power has been liberally exercised. Where the amendment was within the competency of the trial court, the appellate court either allowed the amendment or considered it as made. *American Popular Life Insurance Co. v. Day,* 39 *N. J. L.* 89 (*E. & A.* 1876); *Holt v. United Security Life Insurance Co.,* 76 *N. J. L.* 585 (*E. & A.* 1908); *Boniewsky v. Polish Home of Lodi,* 103 *N. J. L.* 323, 336 (*E. & A.* 1927). The amendatory function now has a constitutional basis in the grant to this court by article VI, section V, paragraph 3 of the Constitution of 1947 of original jurisdiction for the complete determination of the cause on review, declared in general terms in the complementary *Rule* 1 :4–10, and specifically applied in *Rule* 1 :2–20(*b*), providing that on such a review a new trial shall not be granted, *inter alia,* for errors in procedure, unless it appears, after a view of the whole case, that the error injuriously affected the substantial rights of the party appellant. This provision of the Constitution vests the same authority in the Appellate Division of the Superior Court. *Vide Rules* 4 :2–6 and 4 :4–7, making applicable the cited rules governing this court; also *Rules* 3 :60 and 3 :61, regulating civil practice in the Superior Court.

 It will not be amiss to say, in passing, that what transpired here proves the policy of *Rule* 3 :38–2, directing that every verdict be returned by the jury to the judge in open court. But in the particular circumstances, we find no occasion to invoke the regulation. The parties consented that the verdict be taken by the county judge in the absence of the trial judge, and non-compliance with the rule is not

assigned for error. But this does not mean that the rule may be waived by the consent of the parties. It is a regulation designed to avert abortive trials in the interest of administrative economy and efficiency and wholly beyond the control of the parties.

## II.

But it is urged that, even so, there was prejudicial error in the overruling of evidence tending to show pecuniary loss suffered by an adult son of the deceased as the result of his death, in that such proof would enhance the damages found by the jury to have been fully compensated by the co-defendants.

The question concerns the meaning of the amendment of section 4 of the Death Act (*R. S.* 2:47–4) effected by chapter 429 of the Session Laws of 1948 (*L.* 1948, *p.* 1670), considered in relation to the preexisting section 5 of the original act. The amendment provides that the recovery under the act shall be for "the exclusive benefit of the widow, surviving husband, dependent children of the decedent, or the descendants of any such children, the dependent natural parents of the decedent, the dependent adopting parents of a legally adopted child and the dependent next of kin of the decedent," excluding "the natural parents of a decedent who was legally adopted." The distribution is thereby directed to be made "in the proportions provided by law for the distribution of personal property of intestates, except that where the decedent leaves a surviving widow or husband, but no dependent children or descendants of such children, the widow or surviving husband shall be entitled to the whole of the amount so recovered." It is said that "there is no relationship between the damage suffered by specific next of kin and the amount actually distributed to them, as under the English Death Act"; and that the rule of damages set down in section 5 is not affected by the amendment of section 4, and so dependency has no place in assessing the damages

sustained by "the widow, surviving husband and next of kin of the deceased," even though the right to share in the fund is conditioned on dependency by the amended section 4. The reasoning is that these sections are "entirely independent of each other"; that the design of the statute "is to compel the tort-feasor to pay all the damages that he has caused by his wrongful act," and therefore the damages are measured by the formula contained in the unchanged section 5, but are distributed as provided by the 1948 amendment of section 4. We take a different view of the amendment.

The intent of the original statute was to give a right of action for the present value of the "pecuniary injuries" suffered by the "widow and next of kin" of the deceased. *L.* 1848, *p.* 151. In 1913, the act was amended to include the "surviving husband" in the beneficiary class. *L.* 1913, *p.* 586. See, also, *L.* 1917, *p.* 531. The pertinent provisions of the act were incorporated in the Revision of 1937, in two separate sections. Section 4 defined the beneficiary class; section 5 prescribed the rule of damages. In both sections the references to the beneficiaries are in identical terms. Recovery was to be had for the pecuniary injuries sustained by the "widow, surviving husband and next of kin" of the deceased, and distributed to them according to the statute of distribution. The 1948 amendment of section 4 redefined and qualified the beneficiary category to include only the enumerated dependent next of kin. The right of the widow or surviving husband to partake of the benefits of the statute is not conditioned on dependency. The amendment of section 4 necessarily modified *pro tanto* the provision of section 5. This rule of interpretation serves the indubitable reason and spirit of the amendment. It is not to be supposed that the Legislature designed to measure the worth of the beneficiaries' expectancies by pecuniary losses sustained by non-beneficiaries. The evident policy of the statute is the recovery of damages for the pecuniary injury sustained by the designated beneficiaries. The act is essentially remedial rather than penal. Damages are assessed to compen-

sate for the injuries sustained by the persons to whom they are payable. Compare *Boott Mills. Co. v. Boston & M. R.,* 218 *Mass.* 582, 106 *N. E.* 680 (*Sup. Jud.* 1914); *Wilder v. Charleston Transit Co.,* 120 *W. Va.* 319, 197 *S. E.* 814, 117 *A. L. R.* 948 (*Ct. Apps.* 1938). The original statute of 1848 made recoverable "the pecuniary injury the designated beneficiaries * * * sustained by reason of the death"; and the "cause of action" thus created enured "to such persons as a vested right," and to them alone. *Cooper v. Shore Electric Co.,* 63 *N. J. L.* 558 (*E. & A.* 1899); *Myers v. Holborn,* 58 *N. J. L.* 193 (*E. & A.* 1895); *Gottlieb v. North Jersey St. Ry. Co.,* 72 *N. J. L.* 480 (*E. & A.* 1906); *Soden v. Trenton and Mercer County Traction Corp.,* 101 *N. J. L.* 393 (*E. & A.* 1925). Chief Justice Beasley said of the first act:

"It also seems to me that the literal language of the statute is to be followed, that is, a right of action exists in all cases in which such right would have existed in the party injured if death had not ensued, and that all the next of kin who would take in case of intestacy belong to the class of persons who, it is competent for a jury, under the given circumstances, to say, have sustained a pecuniary injury resulting from the death of their kinsman." *Paulmier, adm'r. of Carhart, v. Erie R. Co.,* 34 *N. J. L.* 151 (*Sup. Ct.* 1870).

This is not a mere survival statute. It does not abolish the rule that a personal action dies with the person injured. The act creates new causes of action for the loss suffered by the designated beneficiaries, measured by the reasonable expectation of pecuniary advantage from the continuance of the life of the deceased. *Paulmier, adm'r., v. Erie R. R. Co.,* cited *supra; Carter v. West Jersey & Seashore R. Co.,* 76 *N. J. L.* 602 (*E. & A.* 1908); *McStay v. Przychocki,* 7 *N. J.* 456 (1951). It is a corollary of these considerations that if none of the specified class of beneficiaries has sustained a recoverable pecuniary loss, the action will not lie. Compare *Wilder v. Charleston Transit Co.,* cited *supra.* This is fundamental in the statute. The wrongdoer is not answerable for the injury suffered by the next of kin

of the deceased not within the statutory category. Damages are given "for injuries resulting from the severance of a relation of kinship." *Demarest v. Little,* 47 *N. J. L.* 28 (*Sup. Ct.* 1885). The design of section 5, from the very beginning, was the limitation of the measure of damages to the "pecuniary injuries" sustained by the statutory beneficiaries as the result of the death: The statutory policy was remedial and not punitive. The recovery was confined to the pecuniary loss suffered "by the persons for whose benefit the action was brought"—which "would have been the proper rule of damages if it had not been prescribed by the act." *Telfer v. Northern Railroad Co.,* 30 *N. J. L.* 188 (*Sup. Ct.* 1862); *May, adm'r. v. West Jersey and Seashore R. R. Co.,* 62 *N. J. L.* 67 (*Sup. Ct.* 1898). This is the general view of the statutes of this class. *Brown v. Chicago & N. W. R. Co.,* 102 *Wis.* 137, 77 *N. W.* 748 (*Sup.* 1899); *Webster v. Norwegian Min. Co.,* 137 *Cal.* 399, 70 *Pac.* 276 (*Sup.* 1902).

But, in virtue of the specific terms of the amendment of section 4, the recovery is for the "exclusive benefit" of the enumerated beneficiaries; and section 5 is qualified accordingly. For the force of this provision, see *Wilder v. Charleston Transit Co.,* cited *supra.* Section 5 is applicable only insofar as it is consistent with the later expression of the legislative will embodied in the amendment of section 4. *Sutherland's Statutory Construction* (*3d ed.*), *section* 1935. Consistency is the element which determines the operation of an amendment upon related sections of the same statute and acts *in pari materia. Farrell v. State,* 54 *N. J. L.* 416 (*Sup. Ct.* 1892). The sections are to be read together and reconciled in keeping with the reason and policy of the amendment. *In re Huyler,* 133 *N. J. L.* 171 (*Sup. Ct.* 1945); *In re Cole's Estate,* 235 *N. Y.* 48, 138 *N. E.* 733 (*Ct. Apps.* 1923). The reconciliation of apparently conflicting statutes, judged by the letter alone, to conform to the spirit of the legislation as a whole is a common exercise of the judicial interpretive function.

It is of the essence of the statutory remedy that the damage shall represent not the value of the life lost, but the sum of the present worth of the pecuniary loss of each of the beneficiaries occasioned by the death. The right of action thus given is not grounded in the injury sustained by the estate, but rather in the loss suffered by the statutory beneficiaries. As said, it is in no sense the enforcement of an action by survival. The damages which the deceased might have had had he lived are not includable in the award; and by the same token the pecuniary loss ensuing from the death to others than the designated beneficiaries is not recoverable. By the amended section 4, the recovery is *ex vi termini* had for the exclusive benefit of the widow, surviving husband and dependent next of kin as therein declared. A cause of action is created in favor of the persons thus designated, and if there be none such, there can be no recovery. It is their pecuniary injury that is to be recompensed. not the loss suffered by persons outside of the beneficiary class. An intention to deviate from this fundamental principle of the prior law is not indicated. Compare *Lewis v. Hunlock Creek & M. Turnpike Co.*, 203 *Pa.* 511, 53 *A.* 349 (*Sup.* 1902).

Being remedial in nature, the statute is to be liberally construed and applied to effectuate its beneficent object. *Haggerty v. Central Railroad Co.*, 31 *N. J. L.* 349 (*Sup. Ct.* 1865); *Cooper v. Shore Electric Co.*, cited *supra*; *Gottlieb v. North Jersey St. Ry. Co.*, cited *supra*. But the act is in derogation of the common law; and the terms definitive of the persons or classes of persons for whom the remedy is provided are not to be expanded beyond their fair intendment. *Ross v. Miller*, 115 *N. J. L.* 61 (*Sup. Ct.* 1935). So, also, barring a definite expression *contra*, the restriction of the class of beneficiaries to certain dependent next of kin constitutes a limitation of damages to the pecuniary loss sustained by such beneficiaries, in keeping with the pre-existing statutory policy. A purpose to enlarge the damages beyond the actual pecuniary loss suffered by the designated beneficiaries cannot be left to inference more or less uncertain.

The statutory rule is ordinarily given a strict construction in favor of damages compensatory rather than punitive in character. At common law, no civil action is maintainable for the death of a human being occasioned by the wrongful act or neglect of another, or for any damages suffered by any person in consequence of such death. *Grosso v. Delaware, L. & W. R. R. Co.,* 50 *N. J. L.* 317 (*Sup. Ct.* 1888); *Soden v. Trenton and Mercer County Traction Corp.,* cited *supra.* The amendment is to be construed with reference to this well established principle of the common law and as well the terms of the old statute, and effectuated according to its plain and obvious meaning. The old law, the mischief and the remedy are the guiding considerations in determining the quality and scope and the reason of the legislative expression. *Singer Sewing Machine Co. v. New Jersey Unemployment Compensation Commission,* 128 *N. J. L.* 611 (*Sup. Ct.* 1942), affirmed 130 *N. J. L.* 173 (*E. & A.* 1943); *City Affairs Committee of Jersey City v. Department of Taxation,* 134 *N. J. L.* 198 (*Sup. Ct.* 1946).

It follows that the remedy provided by the statute, as thus amended, is not available to an adult child unless he was a dependent of the deceased parent at the time of the parent's death. Damage is not implied from the relationship alone. And pecuniary loss is not in itself enough to bring such a child within the beneficiary category. There cannot be a recovery of the reasonable value of the expectancy unless there be dependency in fact. The dependency of the adult child must be actual, and not legal merely, although partial dependency in substantial degree will meet the statutory criterion. Benefit and dependence are not synonomous terms. Compare *Havey v. Erie R. R. Co.,* 88 *N. J. L.* 684 (*E. & A.* 1916). Dependency in the statutory intendment has reference to maintenance. It is requisite that there be some degree of dependency in this sense or the statutory condition is not met. Occasional gifts or contributions made by the parent to the child do not, without more, establish such dependency as will give rise to a pecuniary interest in

the life of the parent essential to a right of action under the statute. Compare *State, to Use of Elder v. Baltimore & Ohio R. Co.*, 126 *Md.* 497, 95 *A.* 65 (*Ct. Apps.* 1915); *Mulhall v. Fallon,* 176 *Mass.* 266, 57 *N. E.* 386 (*Sup. Jud.* 1900); *Willis Coal & Mining Co. v. Grizzell,* 198 *Ill.* 313, 65 *N. E.* 74 (*Sup.* 1902); *Illinois Central R. R. Co. v. Barron,* 72 *U. S.* 90, 18 *L. Ed.* 591 (1867).

 It is conceded that here there was no dependency between the adult child and his deceased parent; and the exception therefore is devoid of substance.

This is the sense of the 1948 amendment of section 4. The statute has lately been revised to provide that the recovery shall be for the exclusive benefit "of the persons entitled to take any intestate personal property of the decedent," measured by their pecuniary injuries as a result of the death, and that if "any of the persons so entitled were not dependent on the decedent at his death, the remainder of the persons so entitled shall take the same as though they were the sole persons so entitled," but that if "all or none of the persons so entitled were then dependent on him, they shall all take as aforesaid." *Title* 2A :31–4, 2A :31–5. This revision did not become effective until January 1, 1952, and therefore has no application here.

### III.

 The remaining assignments of error relate to the adequacy of the instructions as to the responsibility of the defendant Peterson under the doctrine of *respondeal superior* and the sufficiency of the evidence to sustain what is deemed to be a verdict for this defendant on the issue of liability. Since there was a special verdict which resolved that issue in favor of plaintiff, there is no occasion to consider the sufficiency of the charge.

 The special verdict returned by the jury subjects the defendant Peterson to a judgment for nominal damages of six cents and costs. Ordinarily, nominal damages are recoverable where the evidence establishes the breach of a

legal duty or the invasion of a legal right, although there were no ensuing actual damages or none shown. The rule obtains in some jurisdictions that while nominal damages are allowable in actions in tort for strict trespass in vindication of the right, an action in case merely—*i. e.*, for damages actually sustained—is not maintainable without proof of actual damage. *Butterworth v. Butterworth* (1920), *Prob. (Eng.)* 126, 10 *B. R. C.* 352; *Sullivan v. Old Colony St. Ry. Co.,* 200 *Mass.* 303, 86 *N. E.* 511 (*Sup. Jud.* 1908). But it is the settled view in New Jersey that nominal damages may be had in an action in tort for personal injuries, even though no actual damages be sustained from the violation of the right. or none proved. *Klein v. Shryer,* 106 *N. J. L.* 423 (*E. & A.* 1930). See, also, *Weber v. Morris & Essex R. R. Co.,* 35 *N. J. L.* 409 (*Sup. Ct.* 1872); *A. & S. Silk Dyeing Co. v. East Jersey Water Co.,* 88 *N. J. L.* 273 (*E. & A.* 1915); *Spiegel v. Evergreen Cemetery Co.,* 117 *N. J. L.* 90 (*Sup. Ct.* 1936); *Culver v. Dziki,* 123 *N. J. L.* 66 (*Sup. Ct.* 1939); *Moeller v. Weston Trucking & Forwarding Co., Inc.,* 136 *N. J. L.* 643 (*Sup. Ct.* 1948). This is the general rule elsewhere, applicable also to actions for wrongful death. 15 *Am. Jur.,* 393, 395, 396; 25 *C. J. S., Damages,* § 10, page 468; *Id., Death,* § 96, *page* 1238. And nominal damages will be awarded in vindication of the right even where reparation of the loss was subsequently made. *Dow v. Humbert,* 91 *U. S.* 294, 23 *L. Ed.* 368 (1875); *Macomber v. Moor,* 128 *Me.* 481, 148 *A.* 682 (*Sup. Jud.* 1930).

The judgment is accordingly amended to conform to the special verdict as molded to effectuate the expressed intent of the jury, and, as so amended, affirmed, with costs to plaintiff in the County Court. Neither party shall have costs in this court.

*For amendment and affirmance*—Chief Justice VANDERBILT and Justices CASE, HEHER, OLIPHANT, WACHENFELD, BURLING and ACKERSON—7.

*For reversal*—None.