OTTO WILKEN ET AL., PETITIONERS-DEFENDANTS, v. SHEIN'S EXPRESS CO., RESPONDENT-PROSECUTOR.

Submitted January 18, 1944—Decided April 20, 1944.

Before Justices CASE, DONGES and PORTER.

For the defendants, *David Roskein* and *John A. Laird*.

For the prosecutor, *James J. Skeffington.*

The opinion of the court was delivered by

DONGES, J. This is a workmen's compensation case. The only question raised is as to dependency.

On September 22d, 1941, Gerald Wilken admittedly suffered a compensable injury, arising out of and in the course of his employment, from which he died on September 25th, 1941. He was then nearly nineteen years of age. Petition for compensation was filed by Otto Wilken and Luvenia Wilken, parents of decedent, with whom he lived. In the home at the time of Gerald's death were his parents, two brothers, Charles, then over sixteen years of age, Robert, then over twelve years of age, and a nephew, Harry Wilken, Jr., then about four years of age. At the time of his death he was earning $30 per week, all of which he gave to his mother for the maintenance of the home and the living of the occupants thereof. All of these matters are not controverted.

The Bureau determined that the mother, the brother Robert and the nephew Harry were partial dependents and entered judgment accordingly. The Essex Common Pleas affirmed the judgment as to the three persons mentioned and also held that the father was a partial dependent and entitled to compensation. The prosecutor challenges the judgment as to the father and nephew only.

As to the father's and nephew's status, it is provided by statute, *R. S.* 34:15–13, that:

"The term 'dependents' shall apply to and include any or all of the following who are dependent upon the deceased at the time of accident or death, namely: Husband, wife, parents, * * * nephew. * * * In determining the number of dependents, where the deceased employee was a minor, the number of persons dependent upon the deceased employee shall be determined in the same way as if the deceased employee were an adult, notwithstanding any rule of law as to the person entitled to a minor's wages."

From the uncontradicted testimony it appears that Otto Wilken gave his wife $30 each week from his wages and that Gerald gave his mother his entire wages, which, prior to the week of the accident when they were increased to $30 per week, amounted to "an average from $18 to $23 a week." Mrs. Wilken testified that she gave Gerald money each week from his earnings and expended certain sums for his clothing, food and up-keep, amounting in all to $14.43 per week. These figures are not challenged by prosecutor.

Unquestionably, the father benefited by the earnings of his son, but benefit is not the test. The proof is that the father earned from $50 to $60 per week; that, as stated, he gave his wife $30 each week and kept the balance. It seems clear that the father was not, in fact, dependent upon the decedent as required by our decisions. *Miller* v. *Public Service Railway Co.,* 84 *N. J. L.* 174; *Muzik* v. *Erie Railroad Co.,* 85 *Id.* 129; 86 *Id.* 695; *Jackson* v. *Erie Railroad Co.,* 86 *Id.* 550; *Havey, Adm.,* v. *Erie Railroad Co.,* 87 *Id.* 444; 88 *Id.* 684; *Sindle* v. *E. I. DuPont de Nemours & Co.,* 96 *Id.* 553.

As to the nephew of decedent, the testimony is that his parents are alive and living by themselves in a room; that Harry has been living with his grandfather and grandmother, the petitioners-defendants, since about a week after his birth, when his mother returned from the hospital; that his parents have made no contribution to his support; that he has been maintained as a member of the Wilken, Sr., household; and that the contribution by decedent to his mother for the

maintenance of the household was shared by the nephew, as by the other members of the family. Prosecutor characterizes this testimony as unbelievable and contrary to the usual conduct of parents, because it manifests an absolute disregard of parental duty and desire for the welfare of offspring. However, there is no testimony contradicting the testimony of the grandmother and the father and mother of the nephew. In the absence of anything to challenge its accuracy, it must be accepted as true. It appears then that the nephew also was the recipient of aid toward his maintenance from decedent and was a partial dependent.

In *Conners* v. *Public Service Electric Co.*, 89 *N. J. L.* 99, Mr. Justice Parker, in dealing with the question of dependency under the statute, said, quoting from *Hammill* v. *Pennsylvania Railroad Co.*, 87 *Id.* 388; *affirmed*, 88 *Id.* 717:

" 'We understand the phrases "actual dependent" and "who are dependent upon deceased," as used in paragraph 13 of the act as amended, to mean relatives in some degree mentioned in that paragraph, who were being wholly or to a substantial degree supported by the deceased at the time of his death.' "

Mr. Justice Parker then said:

"We also went on to say that there was evidence justifying the finding of that fact by the trial court, and that is also the situation in this case. It is true that the father himself worked and made $26.40 a week, and the mother and sister also worked. That does not alter the situation that the earnings of the deceased went to the general support of the family; and that the amount he contributed, as found by the court (and the finding was supported by evidence), was more than his board and lodging and other expenses amounted to. The father testified that deceased gave all his money every week to his mother, and that it was more than the cost of his keep, so that it was a legitimate inference that the family was deriving substantial benefit from the fact that he remained living there and voluntarily gave all his wages into the common fund."

So, in the instant case there can be no doubt that the decedent's contribution was for the benefit of all of the occupants of the home, and all were partially dependent thereon, except his father.

As to the nephew, the testimony is conclusive that, in fact, he was maintained by the contributions of his grandfather and decedent to the grandmother for the living of all of the residents in their home. The fact that he had a father and mother living, upon whom a legal as well as moral duty rested for his support, does not deny him relief, when he was in fact dependent upon others. This doctrine was dealt with in *Gliewe* v. *Mulberry Metal Stamping Works, Inc.*, 125 *N. J. L.* 555, wherein Chief Justice Brogan, in a case where a mother, with husband living, sought compensation as a total dependent, said:

"Here the petitioner, because of her husband's inability to provide for her, was totally dependent upon the earnings of her deceased son for support. The statutory fiat of conclusive presumption in case of a decedent's widow does not prevent a mother, before she is widowed, from being totally dependent upon some other member of the household. Nothing in the statute makes doubtful the right of the petitioner to recover compensation based on the degree of dependency that really existed when death, compensable under the law, comes to that member of the family to whom the mother was obliged to look for support. The statutory mandate that a widow and natural children under sixteen years of age, actually part of the decedent's household at the time of his death, are conclusively presumed to be his dependents, is a sound, sociological principle. That it may be contrary to fact in many cases does not make it any the less sound public policy. It does not follow that because there be a legal presumption of dependency, under our statute, *supra,* in favor of a widow on the death of her husband, she may not, as here, have been entirely dependent on her son while her husband was living."

We conclude that this reasoning applies to any other relative, within the statutory designation, who is a total or partial dependent of the deceased. It is a question of fact as to the existence of dependency, based upon the actual situation existing at the time of the death of the contributor.

Nor was the action of the Common Pleas in determining whether the father, who was a petitioner in the Bureau, and who claimed to come within the terms of the statute, was

entitled to be included in the judgment, beyond its jurisdiction. The statute *R. S.* 34:15–66 provides that, on appeal to the Court of Common Pleas, the judge thereof "shall in a summary manner decide the merits of the controversy" upon the transcript of the record and testimony before the Bureau. In *New York Live Poultry Trucking Co.* v. *Schwartz,* 5 *N. J. Mis. R.* 178; *affirmed,* 104 *N. J. L.* 180, it was said: "we think it was the very object of the amendment of 1921 to give the Pleas jurisdiction to review the findings of fact on a written transcript of the testimony, and determine the merits of the controversy." We conclude that the statute means that the Pleas on appeal shall consider the entire case and determine it on the merits.

The judgment of the Common Pleas will be reversed as to the father and the record remanded to that court to make an award of compensation in accordance with the views expressed herein. No costs to either party.