34005.  GARDEN CITY CAB COMPANY INC. *et al. v.* RANSOM.

DECIDED JUNE 4, 1952.

*Kennedy & Sognier, Ernest J. Haar,* for plaintiffs in error.
*Brannen, Clark & Hester,* contra.

SUTTON, C. J.  Ethel Mae Ransom brought an action for damages against Garden City Cab Company Inc., John D. Futch, and Carolina Casualty Insurance Company, for the homicide of her son, Melvin Ransom, through the alleged negligence of the defendants, Futch and the cab company, in the operation of a taxicab.  The paragraphs of the amended petition relevant and material to a disposition of the points raised are substantially as follows:  (5) Carolina Casualty Insurance Company issued its policy, number 29684, whereby it insured the taxicabs of Garden City Cab Company Inc., agreeing to pay within the limits of the policy for personal injuries, including death resulting therefrom, in monetary damages arising out of the operations of said taxicab company.  The policy of insurance, in compliance with the valid ordinances of the City of Savannah, expressly included an endorsement reading, "The Insurer consents to be joined in any suit which shall be brought by a member of the public against the Assured under this policy."  John D. Futch and the taxicab company are the assured, and the insurer is joined in this action under said agree-

ment, but with its liability limited to $5000, which is the limitation of the insurer's liablity under said policy. (6) As the said policy of insurance was canceled by the defendant insurance company by notice dated August 24, 1951 (the injury and death of the plaintiff's son are alleged to have occurred on August 9, 1951), the policy is not in the possession of the assured, but is in the possession of the defendant insurance company, which was notified to produce the original policy, number 29684, at the November term of the court in which the petition was filed, to be used by the plaintiff as evidence. (7) The plaintiff is the mother of Melvin Ransom, who was born to her in Beaufort, South Carolina, on September 8, 1945, and the child was 5 years, 11 months, and 1 day old when he was killed on August 9, 1951. (8) When the child was six months old, the plaintiff agreed with her brother, Melvin Ransom Hanson, and her sister-in-law Maud Hanson, who were a childless married couple, for the child to be brought to Savannah. The brother explained to the plaintiff the desire of his wife and himself to establish a home wherein the infant would provide company for them. The parties expressly agreed that there would be no relinquishment of the ties of mother and son between the plaintiff and her child, but that the child would be brought up to recognize the plaintiff as his real mother with the mother and child visiting each other as often as desired, which visitations were to increase as the child grew older, so that the plaintiff would have the pleasure and comfort of her child and a child's love as naturally exhibited towards his real mother. The plaintiff's brother explained that he was employed at that time as a mechanic with good pay, but that he intended to open an auto repair shop of his own, which would require him to be away from his home for long and unusual hours, and that the child would be a comfort and delight to his wife during his absence on such business. The plaintiff's brother further agreed that he would teach the child the auto mechanic's trade, so that as the child grew into manhood he would be able to provide for the support and maintenance of the plaintiff in her old age. The brother further agreed to support and maintain the plaintiff as long as she permitted her son to remain with him and his wife. In compliance with this agreement, the plaintiff's brother has supported and maintained the

plaintiff during the entire period that the child remained with the brother and sister-in-law, so that the plaintiff mother was actually dependent upon the child, as the child's services were rendered to her brother and sister-in-law in the manner hereinafter set out. The plaintiff mother had been in bad health and has been dependent upon the income which the brother and sister-in-law gave to her in return for the services, comfort, and company which were rendered them by her son. The plaintiff looked forward to the days when her health would improve to the extent that she could re-establish her home with her son and to the comfort and support which her son would have given her during his adult days and her old age. (9) The plaintiff's child was above the average in intelligence, and rendered valuable services to the plaintiff's brother and sister-in-law, such as running errands, cleaning, and sweeping the house during the time that the sister-in-law was at her work as a domestic servant away from the house, taking care of the house and answering the doorbell during such periods when the brother was at his garage and the sister-in-law at her work, washing and drying the dishes, and performing similar duties around the home. The plaintiff's child was taken to the brother's business place, known as the Carolina Garage, where the child proved himself useful to the brother in running errands, handing tools to the brother, holding parts, and generally rendering assistance. As a result of and in return for the child's valuable services, the brother and sister-in-law had increased the payments made for the support and maintenance of the plaintiff mother, including expensive medical bills and hospital expenses, which the brother paid for her as a part of the agreement whereby the child's value in rendering services to the brother and sister-in-law would be paid to her, and she was dependent upon the child's services to the brother and sister-in-law. These services were of the value of $10 a week at the time of the child's death, and would have been worth an equal amount during the son's minority, and would have increased after the child learned the trade of an auto repair mechanic. The plaintiff would also have received additional sums from her son as he grew older and followed this profitable trade. The plaintiff does not have a record of the medical expenses and hospital bills paid by her

brother prior to 1950, but estimates that these were $200 per year, as her health had been bad and she has not been able to work except for a short period of time. The plaintiff has records of payments made by her brother for her medical bills during 1950 and 1951, which total $439.32. During the entire period of time that her son was with her brother and sister-in-law, the plaintiff received from them monthly, in accordance with the agreement, $25 to $30, in addition to such other funds as they would advance to her from time to time in accordance with the agreement for her maintenance and support.

The exception here is to the judgment of the trial court over-ruling the defendants' general and special demurrers to the petition. In their brief, the plaintiffs in error insist that it was error to overrule their special demurrers, on the ground that no contract of insurance was attached to the petition. And they contend that their general demurrer should have been sustained, because the petition failed to show that the plaintiff was depend-ent upon her son and that he contributed to her support; because the petition failed to show that the child was a legitimate child; and because the petition did not show that the codefendant of the insurance company was a common carrier, so as to bring the case within Code, Ann. Supp., § 68-612, providing for an excep-tion to the rule that a cause of action ex contractu may not be joined with one ex delicto. Inasmuch as no contention is made that the petition fails to set out a cause of action upon grounds other than those above set out, no other questions need be ruled upon besides those which have been urged and insisted on by the plaintiffs in error.

1. The plaintiff's suit is brought under Code § 105-1307, which provides: "A mother, or, if no mother, a father, may recover for the homicide of a child, minor or sui juris, upon whom she or he is dependent, or who contributes to her or his support, unless said child shall leave a wife, husband, or child. The mother or father shall be entitled to recover the full value of the life of such child." This statute is in derogation of the common law, and the plaintiff suing thereunder must affirmative-ly plead the facts essential to bring herself within its provisions. *Clements* v. *Pollard*, 53 *Ga. App.* 544 (186 S. E. 587), and cita-tions. Both dependence of the mother on her child, and contri-

bution by the child to the support of its mother must be alleged and proved (*Clay* v. *Central Railroad &c. Co.*, 84 *Ga.* 345, 10 S. E. 967); but it is well settled that the mother's dependence may be partial, and that the contribution by the child to her support may be in part, so long as the deceased child contributed substantially or materially to the mother's support and she was dependent on him therefor to an appreciable or material degree. *Clements* v. *Pollard*, supra; *Central of Georgia Ry. Co.* v. *Swann*, 19 *Ga. App.* 691 (91 S. E. 1068).

It is alleged that the child was born in South Carolina in 1945 and in 1946 was taken to the home of the plaintiff's brother and sister-in-law, in Savannah; and that they were given the right to the company and services of the child in return for payments of support to the plaintiff mother. It was understood and agreed that the relation of mother and son was not to be relinquished by the plaintiff. It is further alleged that the plaintiff was in bad health and was not able to work except for a short period of time, and that she was therefore dependent upon her child's services to her brother and sister-in-law, which services were of the value of $10 per week. The plaintiff alleges that she had received from $25 to $30 per month from her brother and sister-in-law, in addition to payments of about $200 per year for the plaintiff's hospital and medical expenses.

The defendants contend that the plaintiff sold her child to her brother and sister-in-law, and that, for such a lack of parental affection on her part, she is not entitled to claim the full value of the child's life in this action; and the defendants further contend that the services of the child were rendered to a third party, who made the payments to the mother, and so the child's contribution to his mother's support was not direct but was indirect.

The petition does not mention the father of the child. Apparently, the mother had the custody of the child when he was six months old and therefore had the right to surrender control of the child to her brother and sister-in-law. Code, § 74-108. The petition shows that the mother was in bad health, that she was incurring medical and hospital bills, and that she was able to work for only a short period. In such circumstances, it may have been necessary for the mother to surrender custody of her

infant child to a relative, as she alleges she did, although without giving up her status as the parent of the child. Such facts also support the allegation that the plaintiff was dependent upon the services of her child to her brother and sister-in-law, for it does not appear that the mother's income was sufficient to maintain herself; and, regardless of whether the custody of the child was sold or rented by the plaintiff, the status of the plaintiff as the mother of the child, as well as the elements of dependency and contribution, remained, according to the petition, and she was entitled to bring the action.

It does not matter that the contribution to the mother was indirect, that is, from the brother and sister-in-law as a result of the child's services to them, rather than from the child himself. As was said in the case of *Fuller* v. *Inman*, 10 *Ga. App.* 680, 689 (74 S. E. 287): "The child need not contribute any money to the support of the mother, in order to authorize a recovery by her. . . The statute deals with fact, not theory. It is the fact of contribution and the fact of dependency which create the right of action. . . If a dependent mother actually gets the benefit of the child's earnings, or of the child's labor, with or without his father's consent, she is dependent upon that child in a legal sense, and the child materially contributes to her support, within the meaning of the statute." It was also stated (p. 693): "A child who has earning capacity is capable of contributing materially to the support of his parent, within the meaning of the statute with which we are now dealing and if such a child actually puts his earning capacity into operation, either in the form of labor for his parent, or by contributing to the parent the proceeds of labor which he performs for someone else, he is contributing substantially to the parent's support."

The case of *City of Thomasville* v. *Jones*, 17 *Ga. App.* 625, 628 (87 S. E. 923), held that a child working in a store, in which he and his father both had an interest, was contributing to his mother's support, within the meaning of the statute, where the profits of the store were used to support the whole family. In Hogan *v.* Williams, 193 Fed. 2d, 220, where the plaintiff was able to go to New York to earn more money because her daughter served her by looking after and taking care of the plaintiff's mother in Waycross, thereby relieving the plaintiff from remain-

ing in Waycross, where her earnings were less, to care for her mother, it was held that dependency and contribution were shown.

By the alleged arrangements made in the present case, the plaintiff not only was relieved of her duty to support her infant child, but she also received sums of money for the services rendered by her son to her brother and sister-in-law. "It is clear from the authorities that the words 'dependent' and 'contributes' in the statute are flexible words and are to be differently interpreted in different sets of facts, and, except in clear and unusual cases, it is for the jury to decide whether a plaintiff has brought herself within the terms of the section when she has concluded her evidence." *Scott* v. *Torrance,* 69 *Ga. App.* 309, 318 (25 S. E. 2d, 120). Under the allegations of the present petition, it would be a question for a jury as to whether or not the plaintiff's son was substantially and materially contributing to his mother's support, and whether she was wholly or partially dependent upon him therefor, at the time he was killed.

The petition was not subject to general demurrer because it failed to allege that the child was legitimate. In *Brinkley* v. *Dixie Construction Co.,* 205 *Ga.* 415, 417 (54 S. E. 2d, 267), the court in construing the first section of the act of 1943 (Ga. L. 1943, p. 538) stated: "Our construction of the section in question is materially strengthened, we think, by section 2 of the act, which expressly confers upon the the mother of an illegitimate child the right to maintain an action for damages arising out of injuries to or the death of her child, whether she sue in her own right or in her capacity as guardian, executor, or administrator." It is immaterial in the present action whether or not the child was legitimate.

The contention that the petition fails to show that the defendant cab company was a motor common carrier, so as to permit the joinder of an action of tort against it with an action on the insurance contract against the insurance company, is a point which cannot be raised on general demurrer, but must be taken advantage of by special demurrer. *Neil* v. *Dow Law Bank,* 138 *Ga.* 158 (74 S. E. 1027); *Butler* v. *McClure,* 177 *Ga.* 552 (170 S. E. 678). "If there is a defect in a petition on account of misjoinder of causes of action, such defect is not reached by a

demurrer which does not point out the same." *Dannelly* v. *Cuthbert Oil Co.,* 131 *Ga.* 694 (2) (63 S. E. 257).

The trial court did not err in overruling the defendants' general demurrer to the petition for any reason urged or insisted upon by the plaintiffs in error.

2. The defendants' special demurrers to paragraphs 5 and 6 of the petition asserted that no contract of insurance was attached to the petition. In those paragraphs it is alleged that a certain numbered policy, issued by the defendant insurance company and insuring the defendant cab company against liability for personal injuries or death arising out of the operations of the cab company, included an endorsement required by an ordinance of the City of Savannah, to the effect that the insurer consented to be joined in suits brought by members of the public against the taxicab company; and that the said policy was canceled by the defendant insurance company and was in its possession. Such allegations were sufficient to meet the criticism of the special demurrers. *Industrial Life &c. Co.* v. *Young,* 49 *Ga. App.* 293 (175 S. E. 271); *Spalding Construction Co.* v. *Simon,* 36 *Ga. App.* 723, 726 (3) (137 S. E. 901); *American Fidelity &c. Co.* v. *Farmer,* 77 *Ga. App.* 166, 179 (4) (48 S. E. 2d, 122). In the *American Fidelity Company* case, the plaintiff, in an action against a motor carrier and its insurance carrier, attached the certificate of insurance and the endorsement required by the Public Service Commission on policies of that nature, and this was held sufficient, it being alleged that the original policy or a copy thereof was not in the plaintiff's possession. The plaintiff here has set out the endorsement to the policy required by an ordinance of the City of Savannah, and it does not appear from the petition that a certificate of insurance was required by the ordinances of that city. The court did not err in overruling these special demurrers.

*Judgment affirmed. Felton and Worrill, JJ., concur.*