23 N.J. Super. 399 (1952)
93 A.2d 190
PHILIP BOHRMAN, ADMINISTRATOR AD PROSEQUENDUM OF THE ESTATE OF BEVERLY M. BOHRMAN, DECEASED, PLAINTIFF-RESPONDENT,
v.
PENNSYLVANIA RAILROAD COMPANY, A CORPORATION, AND JOSEPH H. FITZSIMMONS, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued November 10, 1952.
Decided December 5, 1952.
*400 Before Judges EASTWOOD, PROCTOR and FRANCIS.
Mr. Francis M. Seaman argued the cause for the plaintiff-respondent.
Mr. Stephen VR. Strong argued the cause for the defendant-appellant Pennsylvania Railroad Company (Messrs. Strong & Strong, attorneys).
The opinion of the court was delivered by EASTWOOD, S.J.A.D.
The defendant Pennsylvania Railroad Company (hereinafter referred to as "the Railroad"), poses two questions by this appeal from a judgment of the Superior Court, Law Division, Middlesex County, entered against it and its engineer, Joseph H. Fitzsimmons, on a jury verdict, in an action instituted for the wrongful death of Beverly M. Bohrman, arising out of the passenger train derailment at Woodbridge, New Jersey, February 6, 1951, to wit: (1) Was there proof of the dependency of the natural parents upon their deceased daughter; if so (2) Was the verdict as reduced by the court to $15,000 excessive? Fitzsimmons did not join in the appeal.
The liability of the defendants for the death of plaintiff's decedent is conceded, thus obviating the necessity of a factual recital.
*401 As administrator ad prosequendum of his deceased daughter's estate, the plaintiff Philip Bohrman instituted a suit for her wrongful death against the defendant railroad company and the train engineer, seeking the recovery of damages in behalf of her next of kin. The matter was tried before the Law Division sitting with a jury.
In his complaint the plaintiff alleges that four named heirs had suffered pecuniary loss, i.e., the two natural parents of the decedent, a half-brother and an adult brother of the whole blood. By consent, the half-brother was stricken from the complaint and, on motion of the defendant railroad at the close of the plaintiff's case, the name of the decedent's brother was stricken from the complaint for lack of proof of dependency. Thereafter, the question submitted to the jury was whether decedent's parents were dependent upon her and, if so, what was the extent of their pecuniary loss by reason of her death?
The defendants offered no proofs nor witnesses to controvert those proffered by the plaintiff. Motions for dismissal were unsuccessfully made by the defendant railroad at the end of the plaintiff's case and again after it had formally rested its case.
The decedent was born June 15, 1932 and was 18 years, 7 months and 3 weeks of age at the date of her death. She lived at home with her parents. She was a normal, active, healthy, popular, friendly young lady, well liked by both boys and girls.
At the date of decedent's death her father, the plaintiff, was 57 years of age and her mother was 53 years of age. Her father owned a beauty shop in Spring Lake, New Jersey, where he employed two to four licensed beauty operators in the winter and summer months respectively. In addition thereto, plaintiff and his wife worked in and about the shop. There was evidence that the decedent had graduated from high school in June of 1950, and intended to become a beauty operator; in fact, at the time of her death she had completed all but approximately five weeks of training at the *402 Wilfred Academy of Hair and Beauty. While decedent was in high school she worked in her father's shop every afternoon after school, on Saturdays until noon and a full day six days a week during school vacations; that from the time she entered beauty culture school she worked in the shop until noon every Saturday; that she cleaned the shop, sterilized equipment, kept the requisite supplies on hand, answered telephone calls, made appointments, received payments, ran errands, kept records, and generally assisted in servicing customers; that before the decedent started to work in her father's shop, her mother assisted him there, but that when decedent took over that work, her mother discontinued working in the shop except on special rush days; that, in addition to assisting her father at the shop, decedent assisted her mother with the cooking, cleaning, washing, ironing and care of the house.
The cross-examination of the father developed that the decedent's tuition at the beauty culture school was $400, and the monthly commutation fare to school was $25, and the Railroad contends that the same were paid by decedent's father as quid pro quo for her work in his shop in her off hours and vacation periods.
The Railroad argues that this action should have been dismissed by the trial court, since decedent left no one surviving her who was entitled to recover under the Death Act. R.S. 2:47-4, as amended by L. 1948, c. 429, p. 1670 (N.J.S. 2A:31-4). This argument is based upon the premise that decedent's parents were not proven to be dependent upon her within the intendment of the statute; that the duties performed by her were in consideration of her father's payment of her education and her maintenance and providing her with the necessities of life; that, in fact, the evidence proves decedent's dependence upon her parents, rather than the reverse situation; that assuming decedent's parents were entitled to recover, the judgment which was reduced to $15,000 is excessive.
*403 The plaintiff, on appeal, contends that applying the test of sufficiency of proofs to raise a jury question, i.e., rejecting all evidence and inferences unfavorable to the plaintiff and giving him benefit of all reasonable inferences, a jury question was raised as to the dependency of the parents upon their deceased child; that the jury's verdict, as reduced, was not excessive and should not be disturbed.
The pertinent statute upon which recovery is predicated, is R.S. 2:47-4, as amended by L. 1948, c. 429, which provides, inter alia:
"The amount recovered in proceedings under this chapter shall be for the exclusive benefit of the widow, surviving husband, dependent children of the decedent, or the descendants of any such children, the dependent natural parents of the decedent, the dependent adopting parents of a legally adopted child and the dependent next of kin of the decedent, except the natural parents of a decedent who was legally adopted, and shall be distributed to them in the proportions provided by law for the distribution of the personal property of intestates, except that where the decedent leaves a surviving widow or husband, but no dependent children or descendants of such children, the widow or surviving husband shall be entitled to the whole of the amount so recovered, which amount shall be paid to her or him." (Italics ours.)
The pivotal point about which the issue revolves is the construction of the word "dependent" as used in the aforementioned statute.
The adjective "dependent" is described as: "Relying on, or subject to, something else for support; not able to exist, or sustain itself, or to perform anything, without the will, power, or aid of something else"; and the noun as: "One who is sustained by another, or who relies on another for support or favor; * * *." Webster's New International Dictionary (2d ed.), at p. 701.
In Black's Law Dictionary (4th ed.), at p. 524, the noun "dependent" is defined as: "One who derives support from another; not merely persons who derive a benefit from the earnings of the deceased; one who depends on or is sustained by another, or who relies on another for support or *404 favor," and the adjective as: "deriving existence, support, or direction from another; * * *."
The Supreme Court of Illinois said of dependency in Peterson v. Industrial Commission, 331 Ill. 254, 162 N.E. 846, 847 (Sup. Ct. 1928):
"* * * The word `dependency' implies a present existing relation between two persons where one is sustained by another or looks to or relies on the aid of another for support or for reasonable necessaries consistent with the dependent's position in life. Wasson Coal Co. v. Industrial Com., 312 Ill. 241, 143 N.E. 584. Partial dependency may exist even though the evidence shows the claimant could have subsisted without the contributions of the deceased employee. It is not necessary to show that the claimant would have been without the necessities of life or that he was without other means of support. * * *"
Cf. King v. Illinois Steel Corporation, 92 Ind. App. 456, 176 N.E. 161, 162 (Ind. App. Ct. 1931).
More specifically, the requirement of dependency as referred to in statutes allowing actions for damages for wrongful death has been held to have been served where the decedent contributed in whole or in part to the support and maintenance of the dependent claimant, regardless of the absence of legal obligation so to do. Elihinger v. Wolf House Furnishing Co., 230 Mo. App. 648, 72 S.W.2d 144, 148 (Ct. App. 1934). The child's contribution must substantially or materially add to the parents' support to constitute a dependency on the part of the parent. Fuller v. Inman, 10 Ga. App. 680, 74 S.E. 287, 290 (Ct. App. 1912).
In Wente v. Shaver, 350 Mo. 1143, 169 S.W.2d 947, at page 954, 145 A.L.R., at p. 1184 (Sup. Ct. 1943), it is said:
"* * * Dependency, as used in cases falling under our damage act, means dependency in fact, and not necessarily a strict legal dependency, making the deceased legally liable to furnish support. 6 Thompson on Negligence, sec. 7049; Bowerman v. Lackawanna Mining Co., 98 Mo. App. 308, 71 S.W. 1062. The fact of pecuniary benefit does not require definite and exact proof; but wherever there exists a reasonable probability of pecuniary benefit to one from the continuing life of another, however arising, the untimely extinction of that *405 life raises a presumption of pecuniary injury. 6 Thompson on Negligence, sec. 7050; McKay v. New England Dredging Co., 92 Me. 454, 43 A. 29; Baltimore & O.R. Co. v. State, 63 Md. 135."
The courts of this State have held that the statutory death action by a parent for the recovery of damages is based upon the loss of the pecuniary favor, or contributions toward maintenance the parents have come to expect of their child, as well as the reasonable expectation that that advantage may be received in the future had the life of the decedent not been interrupted. The favor, contribution or advantage rendered by the decedent need not be of a monetary nature, but may consist of services or labors performed about the household and that recovery is based upon its loss or "pecuniary injury" to the parent.
In McStay v. Przychocki, 9 N.J. Super. 365, 370 (Cty. Ct. 1950), affirmed 7 N.J. 456 (1951), it was stated:
"* * * The statute (R.S. 2:47-5) refers to `pecuniary injuries resulting from such death to * * * next of kin of the deceased.'

* * * * * * * *
While they owe their children the duty of nurture and of intellectual, moral and physical training, they can expect services or chores pertaining to the household from the children over and above any earnings the children might receive. For this loss the parents are entitled to just compensation from a wrongdoer. The loss of a mother's nurture of children is a pecuniary injury to the children. Clark v. Prime, 18 N.J. Misc. 226 (Bergen County Circuit Court 1940). As a corollary, the deprivation of the child's services to the parents is a pecuniary injury to them. * * *"
The dependency referred to in the statute must be actual, though not necessarily legal, and may be partial and not necessarily total dependency. The degree of dependence is not as important as the fact that it be more than mere reception of benefits and partake of the character of reliance upon the receipt of the care, service or favor, in whatever quantity it may be. Turon v. J. & L. Construction Co., 8 N.J. 543, 559 (1952). In the Turon case, the Supreme Court stated:
*406 "* * * The dependency of the adult child must be actual, and not legal merely, although partial dependency in substantial degree will meet the statutory criterion. Benefit and dependence are not synonymous terms. Compare Havey v. Erie R.R. Co., 88 N.J.L. 684 (E. & A. 1916). Dependency in the statutory intendment has reference to maintenance. It is requisite that there be some degree of dependency in this sense or the statutory condition is not met. * * *" (Italics ours.)
Dependency has been held by our courts to be a question of fact. Miller v. Public Service Railway Co., 84 N.J.L. 174 (Sup. Ct. 1913); Muzik v. Erie Railroad Co., 85 N.J.L. 129 (Sup. Ct. 1914), affirmed 86 N.J.L. 695 (E. & A. 1914); Havey v. Erie R.R. Co., 88 N.J.L. 684 (E. & A. 1916).
A review of the record in the matter sub judice indicates that there was considerable testimony of the services rendered by the decedent to her parents, both in the beauty shop and in their home. There is evidence that decedent's parents relied upon those services performed by their daughter; that decedent's father depended upon her in his business; that she relieved her mother for other duties both in the beauty shop and at home, and that it was the expectation of decedent's parents that she would eventually take over the beauty shop and relieve her parents; that the average salary for beginning beauty operators ranges ordinarily from $30 to $60 a week, besides tips ranging anywhere from 25% to 50% of the salary; that a good beauty operator can earn between $75 to $125 a week. Mr. Malovany, who conducted the Newark beauty culture school and other such schools, testified that Beverly showed very high adaptability to the work; that she was a "natural"; that she was able to acquire better than average speed and technical ability, and would have been a very successful operator; that she was extremely attractive and had a wonderful personality. Beverly's father testified that from watching her working on sketches, it was apparent to him that she had unusual talent as a hair stylist, which very few operators have, and that her work in hairdressing was *407 excellent. It is quite apparent that the evidence establishes that there was a partial dependency in a substantial degree of the parents upon the services of their deceased child, thereby constituting a dependency within the legislative intendment of the statute, and that in addition to those services received by the parents in the past, they had reasonable grounds to expect a continuance thereof in the future.
We are of the opinion that there was ample testimony indicating substantial dependence and that the trial court properly submitted the matter to the jury. The testimony clearly supports the verdict of the jury on the question of dependency.
N.J.S.A. 2:47-5 provides, inter alia:
"In every action brought under the provisions of this chapter the jury may give such damages as they shall deem fair and just with reference to the pecuniary injuries resulting from such death to the widow, surviving husband, and next of kin of the deceased."
It is clear that damages are not limited to the amount of actual dependency existing at the time of the wrongful death, but include all future pecuniary loss for which the beneficiaries had a reasonable expectancy, had the death not occurred.
In McStay v. Przychocki, supra, the Supreme Court said of this last-mentioned statutory provision:
"* * * This has been interpreted to mean the `deprivation of a reasonable expectation of a pecuniary advantage which would have resulted by a continuance of the life of the deceased.' Carter v. West Jersey & Seashore R.R. Co., 76 N.J.L. 602 (E. & A. 1908). In applying this rule it was said in Cooper v. Shore Electric Co., 63 N.J.L. 558, 567 (E. & A. 1899):
`With respect to the damages recoverable in such a suit, they are not such as arise from injury to the feelings, but are awarded in reference to a pecuniary loss, and in estimating damages the jury cannot take into consideration mental suffering or loss of society, but must give compensation for pecuniary injury only. * * * Not that the proof with respect to the personal injury need be such that the amount of such damages may appear with exactness. If the evidence be such as to show a reasonable expectation of pecuniary advantage, the extinction of such an expectation by an act occasioning the *408 death of the party from whom it arises will sustain the action, and it is for the jury to say under all the circumstances, taking into account all the uncertainties and contingencies of the particular case, whether there was such a reasonable and well-founded expectation of pecuniary benefit as could be estimated in money, and so become the subject of damages.'"
Considering the age of the decedent, the age of her parents, the many services performed by decedent for her parents, both at home and at the beauty shop, the fact that she had practically finished her training as a beauty culture operator, the fact that her parents had every expectation of her continued work for them and eventually turning the business over to her; considering the same in light of the value of the services performed and reasonably expected to be performed, we are convinced that the pecuniary loss to decedent's parents as determined by the jury, was not excessive.
It is to be noted that there was testimony that upon becoming a licensed operator, decedent, who was then 18 years old, would have earned from $100 to $125 per week, which during the remaining years of her minority alone, and to which her father would have been entitled, would have equaled or exceeded $15,000. Not only were her parents deprived of her probable earnings during her minority (which would have enured to their benefit), but they were also deprived of the reasonable expectancy of contributions of a pecuniary nature which decedent might have made after reaching her majority. These are proper elements to be considered together with the loss of direct services, having a money value, which would have been rendered during minority in and about the home and beauty shop. Morhart v. North Jersey Street Ry. Co., 64 N.J.L. 236 (E. & A. 1899); Graham v. Consolidated Traction Co., Ibid. 10 (Sup. Ct. 1899); Carter v. West Jersey & Seashore R.R. Co., 76 N.J.L. 602 (E. & A. 1908); Mauthe v. B. & G. Service Station, 5 N.J. Misc. 981 (Sup. Ct. 1927); 16 Am. Jur., Death, sec. 182, p. 122; McStay v. Przychocki, supra. To *409 adopt the argument of the appellant that the decedent, under the circumstances prevailing here, was a financial burden to the plaintiffs rather than a contributor to their economic well-being, would result in a return to the outmoded doctrine that a child is a liability  not an asset. Certainly, such a judicial determination should not be revived in this enlightened era.
The judgment is affirmed.