38 N.J. Super. 350 (1955)
118 A.2d 847
EMANUEL CARIANNI, ADMINISTRATOR AD PROSEQUENDUM OF THE ESTATE OF TINA CARIANNI, DECEASED, PLAINTIFF-APPELLANT,
v.
ROBERT F. SCHWENKER, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 10, 1955.
Decided November 25, 1955.
*353 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Francis Sorin argued the cause for plaintiff-appellant.
Mr. E. Burke Finnerty argued the cause for defendant-respondent (Messrs. Townsend & Doyle, attorneys).
The opinion of the court was delivered by CONFORD, J.A.D.
Who is a "dependent" of the decedent, for purposes of the statute providing for recovery of damages on account of the death of a person by wrongful act, neglect or default of another? N.J.S. 2A:31-1, 4, 5. Where lies and who is to determine the line separating the surviving relatives of the decedent who are dependents from those who may sustain "pecuniary injuries" as a result of the death but are nevertheless not dependents, wholly or in part? These are the primary questions which engage our attention on this appeal.
On the morning of August 6, 1953 Tina Carianni, aged 56, wife of the plaintiff, was crossing the Blawenburg-Rocky Hill Road in Montgomery Township, Somerset County, when she was struck and fatally injured by an automobile driven by the defendant. She was returning to a new home being constructed for their occupancy by her husband and then almost completed, after having crossed the road to borrow a knife from a neighbor in order to open the door to the house which had locked with her infant grandchild inside. The evidence concerning the circumstances of the incident consisted almost entirely of a deposition taken from the defendant and read at the trial. It requires no discussion here other than our observation that the issues with respect to liability were properly submitted to the jury.
Mrs. Carianni left as survivors, in addition to her husband, three adult daughters, Marie Moroni, 32 and married, Mildred, 29, and Virginia, 21, the latter two single at the *354 time of the accident but married later. The family lived in Jersey City, the unmarried daughters in the apartment of the parents, the married daughter with her husband and a small child in an apartment above that of the parents in the same house. The plaintiff husband was a carpenter.
Mrs. Moroni testified that the members of her own family took most of their meals at her parents' home and that her mother took care of the child and fed it while she and her husband were at work; that the mother purchased food and clothing for the child; and that she gave her mother $20 per week but that this sum was almost entirely used up on expenditures for the child. Mrs. Moroni had a job which paid $52 per week and her husband earned $60 per week. The trial court refused to allow questions designed to elicit evidence of services rendered by the mother to the daughter, apart from the care of the child, such as laundry, sewing, house cleaning, etc., insofar as they bore upon the issue of dependency of Mrs. Moroni upon the mother, taking the position that dependency was a matter exclusively of financial assistance and that the facts showed that the witness "was not dependent upon her mother for maintenance." However, some testimony concerning the miscellaneous services by the mother referred to crept into the record collaterally. Full development of the scope and nature of the services was prevented by objections on behalf of defendant which were sustained by the court.
Virginia earned $59 per week and paid $10 per week to her mother as "board." She had breakfast and dinner at home. Attempts to elicit evidence concerning various kinds of services rendered to her by the mother were precluded on objection, the court ruling as a matter of law that an adult child earning $59 per week was not a statutory dependent of the mother no matter what services or benefits accrued to the daughter from the mother during her lifetime. Substantially similar offers of evidence and rulings attended plaintiff's attempts to show the services rendered by the mother to the daughter, Mildred, who was earning $55 per week.
*355 There was no evidence as to the amount of the earnings of the plaintiff husband, who was 58 at the death of the decedent, but he testified that whatever he earned he turned over to his wife and that she managed the finances. Hers was the typical daily routine of the devoted wife and mother. There was proof that she prepared meals for the entire family, personally did all the family laundry, made clothes for the daughters and grandchild, did the shopping, housework and dishes and saw to the care, mending and cleaning of the clothing of the husband and daughters. A year after the accident plaintiff became hospitalized for tuberculosis and was still in an institution at the time of trial. There was medical testimony that he has a moderately advanced condition.
In charging the jury the trial court ruled that the pecuniary losses alleged to have been sustained by the daughters could not be taken into consideration by the jury because they were not "actually dependent upon their mother." It left for the jury's determination, in the event it found liability on the part of defendant, whether the plaintiff husband had sustained any pecuniary loss, "taking into account all the uncertainties and contingencies of this particular case," and submitted for their decision the question as to "whether there is such a reasonable and well founded expectation of pecuniary benefit [to the husband] that can be estimated in money and become the subject of damages."
The jury returned a verdict of no cause for action. The appeal raises a number of grounds of alleged error but the only one we deem it necessary to consider is that based upon the exclusion by the trial court of testimony as to the services by the mother to the daughters and as to their losses consequent upon her death. While not so precisely articulated in the brief we deem this point fairly comprehends the contention that the court erred in ruling, as a matter of law, that the daughters were not dependents and their pecuniary losses not recoverable, that position having obviously been the ideological base for the exclusions complained of.
*356 We notice in limine the contention on behalf of defendant that the issue just referred to is moot in view of the jury verdict. The postulate is that it was thus determined that the defendant was not liable at all. We do not think this is a valid assumption. The jury may well have concluded for the defendant on the basis that plaintiff had no damages. Watkins v. Myers, 12 N.J. 71, 74 (1953); Kovacs v. Everett, 37 N.J. Super. 133 (App. Div. 1955). At the time of the accident the plaintiff was temporarily living in Somerset County where he was building a new home. After the death of decedent he was hospitalized for what, at the time of trial, appeared would be a period of indefinite duration. In the light of the charge of the court as quoted above the jury may well have intended by its verdict to signify its conclusion that plaintiff might never improve sufficiently to be released and thus or for other reasons not to be in a position of pecuniary loss attributable to the death of his wife. In that frame of reference plaintiff would have no compensable damages. See Hampton v. Pennsylvania R. Co., 115 N.J.L. 168, 170 (E. & A. 1935). We consequently conclude the issues involved in the court's rulings as to the non-dependency of the daughters are real, not moot.

I.
Prior to 1948 dependency of a member of the beneficiary class upon the decedent was no element of the right of recovery under the Death Act in this State. R.S. 2:47-4; Wellbrook v. Ocean County Trust Co., 154 A. 521, 9 N.J. Misc. 273, 278 (Sup. Ct. 1931). Recovery was for the "exclusive benefit of the widow, surviving husband, and next of kin of the decedent," distributable as in the case of personal property of interstates, except that a spouse took the entirety where the decedent left no children, descendants or parents. In 1948 the Legislature amended R.S. 2:47-4 so as, in substance, to qualify the right of recovery as to all members of the class other than the surviving spouse by the condition that they be "dependent." L. 1948, c. 429. No change, *357 however, was made in the provisions of R.S. 2:47-5, specifying that the damages recoverable should be such as the jury might "deem fair and just with reference to the pecuniary injuries resulting" from the death to the members of the beneficiary class. In Turon v. J. & L. Construction Co., 8 N.J. 543 (1952), it was held, nevertheless, that the damages recoverable under R.S. 2:47-5 were confined to the losses of those persons alone who were in the category of beneficiaries as constricted by the 1948 amendment of R.S. 2:47-4 and that consequently the measure of recovery did not extend to the losses of an adult son of a decedent father who was conceded not to have been dependent upon the father. The opinion is devoid of any facts bearing upon the pecuniary or financial status of the son and we may assume there was no dependency in even a partial sense. Moreover, the decedent died in 1950, and the court was consequently not concerned (see 8 N.J., at page 560) with the effect of N.J.S. 2A:31-4, 5, effective January 1, 1952, to which reference will be had hereinafter.
The legislative history of L. 1948, c. 429, does not illumine the intent of the introduction of the prerequisite of dependency. The "statement" attached to the bill as introduced and passed in the Legislature (Assembly No. 437) contains the uninformative and inaccurate recital that its purpose was to "limit the distribution of damages to the dependents of decedent." See Deaney v. Linen Thread Co., Inc., 19 N.J. 578 (1955). The retrogressive nature of the amendment was the subject of adverse comment during the period when the Legislature was considering the revision of Title 2 of the Revised Statutes. Editorial, "Dependency" As a Criterion for Recovery in a Death Action, 74 N.J.L.J. 209, 212 (June 21, 1951). It was suggested (id.) that if the purpose of the 1948 legislation was only to give dependent survivors preference over non-dependents in the matter of distribution there was no policy justification for the total denial of recovery under that amendment where the only survivors of the decedent were non-dependents other than a surviving spouse, as would occur, for example, if the survivors *358 were parents and the decedent a small child upon whom the parents were not dependent as of the date of death. Cf. McStay v. Przychocki, 7 N.J. 456 (1951), decided upon a state of facts as of prior to the adoption of L. 1948, c. 429. See also Bohrman v. Pennsylvania R. Co., 23 N.J. Super. 399, 402 (App. Div. 1952). Such views may have influenced the legislative treatment of this subject in the revision of Title 2, as the effect thereof, as will be seen, was to avert a failure of recovery where none of the surviving relatives are dependents.
L. 1951, 1st Sp. Sess., c. 344, approved December 5, 1951 and made effective January 1, 1952, adopted Title 2A as a supplement to the Revised Statutes. N.J.S. 2A:31-4 and 2A:31-5 supersede, respectively, R.S. 2:47-4 and R.S. 2:47-5. Together with their captions they read as follows:

"2A:31-4. Persons entitled to amount recovered

The amount recovered in proceedings under this chapter shall be for the exclusive benefit of the persons entitled to take any intestate personal property of the decedent, and in the proportions in which they are entitled to take the same. If any of the persons so entitled were not dependent on the decedent at his death, the remainder of the persons so entitled shall take the same as though they were the sole persons so entitled. If all or none of the persons so entitled were then dependent on him, they shall all take as aforesaid."

"2A:31-5. Assessment of damages by jury

In every action brought under the provisions of this chapter the jury may give such damages as they shall deem fair and just with reference to the pecuniary injuries resulting from such death to the persons entitled to any intestate personal property of the decedent."
The presently significant changes thus effected are seen to include: (a) the requirement in the first instance of dependency in the surviving spouse as well as in the other surviving relatives; (b) a provision for recovery by all persons entitled to take the intestate personal property of the decedent if no members of that class were dependent on the decedent as of the date of death. These changes will be seen to bear directly upon some of the problems necessarily implicated at the trial of the present action. There is no change *359 in the rule of the Turon case, supra, concerning the membership of the class whose pecuniary losses constitute the measure of recovery.

II.
The substantial basis for the rulings of the trial court complained of upon this appeal is that an adult child who is earning enough to support herself without the help of a parent is, as a matter of law, not dependent on the parent in the sense of maintenance. The reliance was upon the Turon case, supra. As has been seen, the non-dependency of the adult son in that case was conceded and what the court there had to say concerning the statutory requirement of dependency was therefore dictum. Nonetheless a dictum by the Supreme Court is entitled to great, if not, indeed, controlling weight in this court. The court there said (8 N.J., at pages 559, 560):
"And pecuniary loss is not in itself enough to bring such a child within the beneficiary category. There cannot be a recovery of the reasonable value of the expectancy unless there be dependency in fact. The dependency of the adult child must be actual, and not legal merely, although partial dependency in substantial degree will meet the statutory criterion. Benefit and dependence are not synonomous terms. Compare Havey v. Erie R. Co., 88 N.J.L. 684 (E. & A. 1916). Dependency in the statutory intendment has reference to maintenance. It is requisite that there be some degree of dependency in this sense or the statutory condition is not met. Occasional gifts or contributions made by the parent to the child do not, without more, establish such dependency as will give rise to a pecuniary interest in the life of the parent essential to a right of action under the statute. * * *"
While quoting the foregoing language this court, in Bohrman v. Pennsylvania R. Co., supra, held that parents, self-supporting to the extent of proprietorship of a beauty shop in which from two to four operators were regularly employed, could nevertheless properly have been found by a jury to be statutory dependents of an 18-year-old daughter (decedent) just graduated from high school who worked for the father in the shop after school and on Saturdays and assisted the *360 mother with housework. The fact that in the Bohrman case it was the parents who were the survivors rather than, as here, the children, does not affect the repugnance of the ruling here with the result there. Clearly, in the case cited, there was no indication that the surviving parents could not sustain themselves without the assistance of the deceased daughter. Yet that is the factor which appears to have governed in the ruling as to the surviving daughters in this case.
It must, however, be conceded, as indicated in the Turon case, supra, by which we propose to be guided herein so far as applicable, that the mere receipt of benefits from the decedent, past or prospective, does not establish dependency within the statute. Otherwise the legislative addition of that requisite in 1948 would be reduced to practical inconsequence. It is not for a court to obliterate so tangible an indication of legislative intent, whatever its own reaction to the policy involved.
There is authority in other jurisdictions both pro and contra the philosophy that dependency, where a requisite under a death act, implies "an actual inability to support themselves, and an actual dependence upon some one else for support." Duval v. Hunt, 34 Fla. 85, 15 So. 876, 881 (Sup. Ct. 1894); in accord, Bortle v. Northern Pac. Ry. Co., 60 Wash. 552, 111 P. 788, 789 (Sup. Ct. 1910), referring to a "necessitous want" on the part of the suitor; Soderstrom v. Missouri Pac. R. Co., 141 S.W.2d 73 (Mo. App. 1940) (not officially reported); Atchison, T. & S.F. Ry. Co. v. Hopkins, 24 Ariz. 103, 207 P. 66 (Sup. Ct. 1922), and see Southern Ry. Co. v. Vessell, 192 Ala. 440, 68 So. 336, 337 (Sup. Ct. 1915). A contrary point of view is reflected in Wells-Dickey Trust Co. v. Chicago, B. & Q.R. Co., 166 Minn. 79, 207 N.W. 186, 188 (Sup. Ct. 1926), reversed on another ground, 275 U.S. 161, 48 S.Ct. 73, 72 L.Ed. 216 (1927); Myers v. Pacific Greyhound Lines, 134 F.2d 457 (10th Cir. 1943) (involving the New Mexico statute); and a whole line of Georgia cases illustrated by Scott v. Torrance, 69 Ga. App. 309, 25 S.E.2d 120 (Ct. App. 1943); cf. Garden City *361 Cab Co., Inc., v. Ransom, 86 Ga. App. 247, 71 S.E.2d 443 (Ct. App. 1952).
The Wells-Dickey Trust Co. case, supra, adopts as the "true test of dependency, actual support rather than inability on the part of the alleged dependent to earn a livelihood" (207 N.W., at page 188). This approach accords with the implicit assumption in this regard in the Bohrman case, supra, as well as that apparently indulged by our former Supreme Court in the workmen's compensation case of Conners v. Public Service Electric Co., 89 N.J.L. 99, 104 (Sup. Ct. 1916), where a father earning $26.40 per week was held a dependent of a son earning $11.94 per week who lived at home and turned over his whole pay toward the support of the family, it appearing that his contribution exceeded the cost of his maintenance. But see Wilken v. Shein's Express Co., 131 N.J.L. 450 (Sup. Ct. 1944). To the same effect is Peterson v. Industrial Commission, 331 Ill. 254, 162 N.E. 846, 847 (Sup. Ct. 1928) (another workmen's compensation case) where it was said: "Partial dependency may exist even though the evidence shows the claimant could have subsisted without the contributions of the deceased employee."
We are of the view that the approach of the cases last referred to and impliedly followed in the Bohrman case, supra, should have the express approval of this court. We do not believe that the "maintenance" test, referred to by the Supreme Court in the Turon case, supra, implies that it must be shown that the surviving claimant is not at all able to maintain himself on his own without the assistance of the decedent, in order to qualify as a dependent. Maintenance is patently a matter of degree. The term is defined in Webster's New International Dictionary (2d ed. 1949), p. 1484, as: "2. That which maintains or supports; means of sustenance; supply of necessaries and conveniences." The Death Act is a remedial enactment and should be construed in that light. Turon, supra (8 N.J., at pages 555, 557). A remedial statute should have a liberal construction; see State v. Meinken, 10 N.J. 348, 352 (1952). Determination of the *362 question as to whether the claimant is being maintained "in substantial degree," at least partially, should reasonably have regard to the asserted dependent's position in life and to his standard of living as of the critical date. Soderstrom v. Missouri Pac. R. Co., supra (141 S.W.2d, at page 79); Peterson v. Industrial Commission, supra (162 N.E., at page 847).
Applying these principles to the facts at hand we are clear that the trial court was not justified in cutting off interrogation on behalf of plaintiff of any of the daughters bearing on benefits and services being derived by them from the decedent mother as of the date of death. Such testimony went to the issues both of dependency and pecuniary loss. Dependency can unquestionably be based upon services having a pecuniary value and looking toward maintenance. Bohrman v. Pennsylvania R. Co., supra; Cleveland, C., C. & St. L. Ry. Co. v. Lutz, 64 Ind. App. 663, 116 N.E. 429, 432 (App. Ct. 1917) (where the decedent mother kept house for the claimant, cooked for him and looked after his clothes); Indian Springs Swimming Pool Corp. v. Maddox, 70 Ga. App. 842, 29 S.E.2d 724, 726 (Ct. App. 1944); Hogan v. Williams, 193 F.2d 220, 224 (5th Cir. 1951), certiorari denied 343 U.S. 942, 72 S.Ct. 1035, 96 L.Ed. 1348 (1952). How much more might have been elicited on the subject of the services to the daughters by the mother or as to the value thereof, had the trial court permitted it, is speculative. But plaintiff was entitled to proceed with any such proof in order fully to establish his factual case as to both dependency and damages. A clearly debatable factual issue on dependency was being developed as to all three daughters. The extent, for example, to which Mrs. Moroni's ability to maintain herself in the manner she was enjoying at the time of her mother's death depended upon her mother's care and feeding of her child, the meals which she and her husband had at the mother's table, and the other services she received from her was a "question of fact." Bohrman, supra (23 N.J. Super., at page 406); Morrow v. Meteor Air Transport, Inc., 14 N.J. Super. 176, 179 (App. Div. 1951); Havey v. Erie R. *363 Co., 88 N.J.L. 684, 685 (E. & A. 1916) (cited in the Turon case, supra (8 N.J., at page 559)). The $20 per week she paid the mother was an element to be considered by the jury but not, as a matter of law, in the circumstances, dispositive of the issue. So, too, as to her right to support from her own husband. Cf. Wilken v. Shein's Express Co., supra (131 N.J.L., at page 454); Morrow v. Meteor Air Transport, Inc., supra (14 N.J. Super., at page 179). The same considerations apply as to the unmarried daughters. They were obviously receiving from the mother sustenance and services of a value considerably in excess of the board payments they made and, again, the question as to whether their dependence upon the mother for continuance of the standard of maintenance in respect to "necessaries and conveniences" they were experiencing before her death was "in substantial degree" (Turon, supra, 8 N.J., at page 559), was a question of fact for resolution by the trier of the facts, not the court. It is notable in the present case that one of the daughters apparently had to quit her job to take care of the father after the mother's death. It was for the jury to take into consideration, on full proofs, the extent to which the standard of living of the daughters may have declined consequent upon the mother's death, notwithstanding their holding $50-$60 per week positions, as evidence of their prior substantial dependence upon her, albeit partial, in a maintenance sense. This kind of factual issue is not to be determined by the court unless the alleged dependency is so insignificant in degree that reasonable men could not fairly disagree as to its insubstantiality.

III.
One other aspect of the proceedings in the Law Division ought to have our attention, particularly in view of the new trial which our determination will entail. Apparently both parties as well as the trial court overlooked the possible contingency that the jury might conclude that neither the husband nor any of the daughters was dependent *364 on the decedent as of the date of her death, in which event plaintiff would be entitled to recover for the pecuniary losses of all of them, under the statute as it now stands (supra I). There seems to have been an assumption in the court's charge to the jury that there was no question as to the requirement or fact of dependency on the part of the husband. As we have noted under I, hereinabove, however, a surviving spouse occupies no different legal position as to dependency than any of the other next of kin. While the husband was legally entitled to the household services of his wife, cf. Stejakowski v. Durable Auto Trucking Co., Inc., 5 N.J. Super. 54, 55 (App. Div. 1949); Cordts v. Vanderbilt, 147 A. 464, 7 N.J. Misc. 856 (Sup. Ct. 1929), the question of his dependency upon her in respect to such services, in view of his status as a wage-earner at the time of her death, is the same in principle, under N.J.S. Title 2A, as that of the daughters who were living with them. Although plaintiff asked no such instruction to the jury it was, in our judgment, necessary as a matter of course, in order fairly to adjudicate the rights of the parties under the statute, that the jury be advised (assuming a finding of liability) that if it found none of the survivors to be dependent upon the decedent as of the date of death, it should determine and allow in its verdict in favor of the plaintiff damages representing the pecuniary injuries resulting from decedent's death sustained by all of them. As the statute now stands the factual issues which devolve upon the jury in a death case include, in addition to those related to liability, (a) the dependency vel non of each eligible member of the statutory class; (b) the pecuniary injuries of those members of the class only who are found to have been dependent on the decedent where some but not all members of the class were so dependent, and (c) the pecuniary injuries of all members of the class where either all or none of them were so dependent. Perhaps the wisest method of procuring a determination of these questions, in the interests of assurance of justice in accordance with the statutory intent, would be through special verdicts, under appropriate instructions from the court.
*365 Our examination of the record disclosing error in the respects noted, the judgment is ordered
Reversed and remanded for a new trial, costs to abide the event.